Ronald E. CHAMBERS and Leslie A. CHAMBERS, as Guardians of Ferren Chambers, an Incapacitated Person; and in their Own Right.

v.

SCHOOL DISTRICT OF PHILADEL-PHIA BOARD OF EDUCATION.

Ronald E. Chambers and Leslie A. Chambers, as guardians of Ferren Chambers, and in their own right, Appellants.

No. 07–4790.

United States Court of Appeals, Third Circuit.

Argued Sept. 22, 2009.

Filed: Nov. 20, 2009.

David J. Berney (Argued), Philadelphia, PA, Attorney for Appellants.

Richard G. Tuttle (Argued), Philadelphia, PA, Attorney for Appellee.

Before: BARRY, FISHER and JORDAN, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Robert and Leslie Chambers are the parents of Ferren Chambers. Ferren suffers from cognitive and developmental disorders and, although now in her twenties, functions on the level of a young child. In 2005, the Chambers sued the School District of Philadelphia Board of Education (the "School District"). Alleging that the School District's failure to provide Ferren with an appropriate education obstructed her intellectual growth, the Chambers asserted various statutory and constitutional violations, both in their own right and on Ferren's behalf. The District Court granted summary judgment for the School District on all of the Chambers' claims. The Chambers now challenge that ruling in most, but not all, respects. Because we conclude that the District Court erroneously found that the Chambers waived two of the statutory claims asserted on Ferren's behalf, we will vacate that portion of

its ruling and remand for further proceedings consistent with this opinion. We will affirm the balance of the District Court's ruling.

## I.

### A.

Ferren[1] was born on October 15, 1985. In April 1987, Ferren underwent testing by a pediatric neurologist, who concluded that Ferren's cognitive development was stunted because of a birth defect. A second neurologist later determined that Ferren suffered from Dandy–Walker syndrome.[2]

In September 1990, before beginning school, Ferren was evaluated by a school psychologist and diagnosed with mental retardation. Thereafter, she was placed in a "life skills" program at the Farrell School. After Ferren exhibited signs of regression, Mr. Chambers removed her from the program and challenged her classification as mentally retarded. A due process hearing was conducted before a state appeals panel, which ruled that Ferren should be reclassified as autistic and placed in an appropriate program. The School District thereafter placed Ferren in a program for autistic students at the Greenfield Elementary School.

Ferren underwent several evaluations over the next few years by various medical professionals. In 1992, a school psychologist concluded that Ferren was severely autistic and recommended that she be placed in a program for retarded children with one-on-one supervision. A 1993 evaluation determined that Ferren's language and motor skills were significantly under-developed. By 1994, Ferren was enrolled in a program for autistic students at the Loesche Elementary School, where she had one-on-one assistance. A medical professional evaluated Ferren in that setting and recommended that she be placed in a private school. Despite requests from Ferren's parents for such a placement, the School District did not initially follow that recommendation.

In 1995, the Chambers sent the School District a request for a due process hearing. The School District misplaced that request. After a several-week-long delay due to the misplacement of the request, a state appeals panel ordered the School District to implement the recommendation by placing Ferren in a private school. In September 1995, the School District placed Ferren at the Wordsworth Academy, a private facility.

Although the Chambers were initially pleased with Ferren's new placement, they requested another due process hearing in November 1996 because Ferren was receiving neither speech therapy nor physical and occupational therapy. In 1997 and 1998, the parties entered into two settlement agreements, requiring the School District to provide those services. The School District did not do so. In 1999, the Chambers filed a complaint with the Pennsylvania Bureau of Special Education, which thereafter issued a report detailing the School District's failure to provide those services. After that report was issued, the School District agreed to pay for Ferren's speech therapy as well as physical and occupational therapy.

---

**1.** The District Court referred to Ferren by her initials, F.C. On appeal, both parties refer to Ferren by her first name in full. Noting that Ferren is not a minor, we adopt the parties' practice of referring to Ferren by her first name.

**2.** Dandy–Walker syndrome is "[a] congenital brain malformation[.]" Taber's Cyclopedic Medical Dictionary 533 (20th ed.2005).

In 2001, the School District asked a special education consultant to assess Ferren's progress at the Wordsworth Academy. The Chambers objected to the School District's request, and a due process hearing ensued. After a state hearing officer ordered the assessment to proceed, the consultant determined that Wordsworth was an inappropriate setting for Ferren and that she should be placed in a school for severely retarded persons.

In April 2002, the Chambers filed another complaint with the Bureau of Special Education, again charging that the School District had failed to provide Ferren with speech therapy as well as physical and occupational therapy. Later that month, a due process hearing was held at the School District's request.

In November 2003, the Chambers requested another due process hearing. The School District failed to forward that request to the Pennsylvania Office for Dispute Resolution. In December 2003, the Chambers directly contacted the Office for Dispute Resolution to ask about the status of their hearing request. Following the Chambers' inquiry, a due process hearing was held in March 2004.

In April 2004, after the March 2004 hearing, a hearing officer issued a report. The hearing officer concluded that the School District owed Ferren a total of 3,180 hours of compensatory education for the 2001–2002, 2002–2003 and 2003–2004 school years. The hearing officer ordered approximately $209,000 to be placed in a trust for Ferren's benefit. The hearing officer also ordered Ferren to be placed in an educational program with students at or above her level. Neither party appealed the hearing officer's decision. Following the hearing, Ferren began attending the Davidson School. The School District has agreed to bear the cost of Ferren's education there until the close of the 2009–2010 school year.

## B.

In May 2005, the Chambers, as Ferren's guardians and in their own right,[3] filed a complaint against the School District in the United States District Court for the Eastern District of Pennsylvania. Count One of the Chambers' complaint,[4] asserted on both the Chambers' and Ferren's behalf, alleged that the School District failed to provide Ferren with a free and appropriate education ("FAPE") and thereby violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.;* § 202 of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"); § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"); and 42 U.S.C. § 1983. Count Two, also asserted on both the Chambers' and Ferren's behalf, alleged that the School District's failure to provide Ferren with a FAPE resulted in a deprivation of their due process rights and sought relief under 42 U.S.C. § 1983. Count Three asserted a claim solely on Ferren's behalf under 42 U.S.C. § 1983 based on alleged equal protection violations.

In January 2007, following discovery, the School District moved for summary judgment. The District Court held a hearing on the motion in March 2007. In a Memorandum and Order entered on November 30, 2007, the District Court granted the School District's motion in its entirety and dismissed all of the Chambers'

---

3. In April 2005, the Chambers were appointed Ferren's guardians by a Pennsylvania court.

4. The Chambers filed an amended complaint in January 2006. Any mention of the complaint refers to the amended complaint, unless otherwise indicated.

claims. *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, No. 05–2535, U.S. Dist. LEXIS 88003, 2007 WL 4225584 (E.D.Pa. Nov. 29, 2007).

The District Court, relying on *Collinsgru v. Palmyra Board of Education*, 161 F.3d 225 (3d Cir.1998), concluded that Mr. and Mrs. Chambers had no standing to pursue Count One's IDEA claim. To the extent the Chambers sought compensatory damages under the IDEA on Ferren's behalf, the District Court determined that such damages are not available under that statute and that their IDEA claim therefore failed as a matter of law. The District Court also understood the Chambers' alleged ADA and RA violations to be the predicates of a 42 U.S.C. § 1983 claim. Relying on *A.W. v. The Jersey City Public Schools*, 486 F.3d 791 (3d Cir.2007) (en banc), the District Court held that those claims failed as a matter of law because, in the Court's view, § 1983 provides no remedy for violations of the IDEA or the RA. In a footnote, the District Court reasoned that it could treat the Chambers' RA claim the same as their ADA claim because, according to the District Court, such claims are analogous. The District Court further determined that the Chambers had waived their ADA and RA claims asserted on Ferren's behalf.

The District Court construed Count Two's due process claim to allege both substantive and procedural due process violations. To the extent Count Two alleged substantive due process violations on their own behalf, the District Court, relying on *McCurdy v. Dodd,* 352 F.3d 820 (3d Cir. 2003), found that the Chambers' failure to present evidence that the School District intentionally interfered with the parent-child relationship, was fatal to such a claim. To the extent Count Two alleged procedural due process violations on the Chambers' behalf, the District Court reasoned that the Chambers had failed both

to identify a protected property interest and, even assuming the existence of such an interest, to demonstrate any deprivation of that interest. With respect to Count Three's equal protection claim on Ferren's behalf, the District Court determined that the Chambers had presented no evidence to sustain such a claim.

This timely appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant or denial of summary judgment. *Alexander v. Nat'l Fire Ins. of Hartford,* 454 F.3d 214, 219 n. 4 (3d Cir. 2006) (citation omitted). To that end, we are "required to apply the same test the district court should have utilized initially." *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md.,* 989 F.2d 635, 637 (3d Cir.1993) (quotation marks and citation omitted). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether such relief is warranted, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III.

### A. IDEA Claims

In Count One of their complaint, the Chambers allege that the School District

failed to provide Ferren with a FAPE, as required by the IDEA.[5] They seek damages for that violation on both their own and Ferren's behalf.[6]

▪ Under the IDEA[7], a state is eligible for federal funding if it makes a FAPE available to disabled children. 20 U.S.C. § 1412(a)(1). The state administers a FAPE by developing an "individualized education program" ("IEP") for every disabled child. 20 U.S.C. § 1414(d); *see also Bd. of Educ. v. Rowley*, 458 U.S. 176, 181–82, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Although the IDEA does not set forth definite guidelines for the formulation of an IEP, *Rowley*, 458 U.S. at 189, 102 S.Ct. 3034, at a minimum, "[t]he IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential," *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir.2004) (internal quotation marks and citation omitted).

The IDEA allows any party—the parent of a disabled child or the state—to file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child[.]" 20 U.S.C. § 1415(b)(6). The filing of a complaint gives rise to a due process hearing, which is conducted in compliance with state procedures. 20 U.S.C. § 1415(f)(1). Under Pennsylvania law, a hearing officer presides over such a hearing. *Mary Courtney T. v. Sch. Dist.*, 575 F.3d 235, 240 (3d Cir.2009). After a hearing, "any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." 20 U.S.C. § 1415(g)(1). In Pennsylvania, an appeal is taken to an appeals panel. *Mary Courtney T.*, 575 F.3d at 240.[8] Once the appeals panel has issued a decision, the IDEA authorizes "[a]ny party aggrieved by the findings and decision" to appeal to a federal district

---

**5.** The School District contends that the Chambers have failed to exhaust their administrative remedies under the IDEA. The School District never asserted an exhaustion defense before the District Court. Ordinarily, such an omission would result in a waiver of that defense on appeal. *See Smith v. Mensinger*, 293 F.3d 641, 647 n. 3 (3d Cir.2002) ("[E]xhaustion is an affirmative defense which can be waived if not properly preserved by a defendant.") (citing *Ray v. Kertes*, 285 F.3d 287 (3d. Cir.2002)). In some instances, however, exhaustion is a jurisdictional matter and therefore cannot be waived. *See In re Morrissey*, 717 F.2d 100, 102 (3d Cir.1983) (noting that lack of jurisdiction is non-waivable). We do not reach this issue here.

**6.** It is undisputed that the Chambers did not appeal the April 2004 decision issued in the state administrative proceedings. For reasons expressed elsewhere, we do not address the effect of their failure to do so on the viability of their IDEA claim. We pause to note, though, that the April 2004 decision was, by most measures, favorable to the

Chambers. The IDEA permits only a "party aggrieved" by a state administrative decision to seek judicial review. 20 U.S.C. § 1415(i)(2)(A). While we question whether the Chambers, who for all intents and purposes were the prevailing party in the state administrative proceedings, qualify as a "party aggrieved" within the meaning of the IDEA, *cf. Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 278 n. 10 (3d Cir.1996), we likewise do not resolve this issue here.

**7.** Any mention of the IDEA in this opinion refers to its pre–2004 amendment version. *See, e.g., J.L. v. Mercer Island Sch. Dist.*, 575 F.3d 1025, 1035 n. 7 (9th Cir.2009).

**8.** We have previously explained that "[t]he Pennsylvania Department of Education funds an independent entity to administer and oversee disputes related to special education services, the Office for Dispute Resolution. This entity is responsible for choosing [h]earing [o]fficers and [a]ppeals [p]anel members." *Mary Courtney T.*, 575 F.3d at 240 n. 1.

court. 20 U.S.C. § 1415(i)(2)(A); *see also Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 527 (3d Cir.1995).

In this case, the District Court found that the Chambers lacked standing to pursue their IDEA claim based on this Court's decision in *Collinsgru*, 161 F.3d 225. In *Collinsgru*, the parents sought to represent their disabled son in an IDEA suit. The district court denied that request. On appeal, we affirmed. After reviewing the IDEA's language and legislative history, we concluded that the IDEA does not "create joint rights in parents." *Id.* at 236.

As both parties' acknowledge, the District Court's reliance on *Collinsgru* is misplaced, as the pertinent part of our holding in that case was abrogated by the Supreme Court in *Winkelman v. Parma City School District*, 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007).[9] In *Winkelman*, which was decided after the District Court held a hearing on the School District's summary judgment motion but before it issued its ruling on the motion, the Supreme Court explained that the IDEA obligates school districts to develop an IEP for every child with a disability and that parents play an important role in that process. 550 U.S. at 524, 127 S.Ct. 1994. The Court "interpret[ed] the

[IDEA's] references to parents' rights to mean what they say: that [the] IDEA includes provisions conveying rights to parents as well as to children." *Id.* at 529, 127 S.Ct. 1994. Thus, the Court reasoned that because "parents enjoy enforceable rights at the administrative stage, ... it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal court." *Id.* at 526, 127 S.Ct. 1994. Under *Winkelman*, therefore, parents undoubtedly have substantive rights under the IDEA that they may enforce by prosecuting claims brought under that statute on their own behalf. Accordingly, the District Court erred in determining that the Chambers do not have standing to pursue their IDEA claim.

Because the District Court stopped its analysis after its standing determination, it did not address whether summary judgment was otherwise appropriate with respect to the Chambers' IDEA claim.[10] Under other circumstances, we might remand to the District Court for it to address the Chambers' IDEA claim in the first instance. We see no need to do so here, as we may affirm the District Court's ruling on other grounds. *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir.2000) (en banc) ("We may affirm the District Court

9. In *Winkelman*, the Court declined to address our core holding in *Collinsgru*: "whether IDEA entitles parents to litigate their child's claims *pro se*." *Winkelman*, 550 U.S. at 535, 127 S.Ct. 1994. In *Collinsgru*, we answered that question in the negative. 161 F.3d at 232 (holding that "the plaintiffs have failed to meet their burden of showing Congress's intent to change the common-law rule against non-lawyer representation" in IDEA suits).

10. The School District implicitly acknowledges the pall *Winkelman* casts on the District Court's standing determination, but nevertheless urges us to affirm on the ground that the Chambers failed to hew to the procedural

requirements for filing an IDEA claim. For instance, the School District points to the Chambers' alleged failure to provide the District Court with "the records of the administrative proceedings[.]" 20 U.S.C. § 1415(i)(2)(C)(i). There is no hint in the record that the School District litigated this point before the District Court, and therefore it is not properly before us. *See Harris v. City of Phila.*, 35 F.3d 840, 845 (3d Cir.1994) (observing that "[t]his court has consistently held that it will not consider issues that are raised for the first time on appeal"); *Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932–33 (3d Cir.1976).

on any grounds supported by the record." (citation omitted)).

Before the District Court, the School District attempted to meet its summary judgment burden by arguing that the damages the Chambers sought were not allowable under the IDEA. In its view, compensatory damages for future losses and pain and suffering are never available under the statute. In their opposition to the motion, the Chambers argued that they were entitled to "recover monetary damages due to the School District's violation of the IDEA[.]" (App.109.) The District Court, concluding that all of the damages the Chambers sought were purely compensatory damages, agreed with the School District that such damages are not available under the IDEA. On appeal, the School District renews its contention that the Chambers are impermissibly seeking compensatory damages. The Chambers, for their part, counter that they are seeking not only compensatory damages, but out-of-pocket expenses they incurred because of the School District's intractability. Specifically, they request reimbursement for attorney's fees, evaluation costs and travel expenses, all of which they allegedly incurred while providing services to Ferren that the School District was supposed to provide.

By its plain terms, the IDEA does not limit the type of relief a court may order, so long as that relief is "appropriate." We have not squarely decided whether compensatory damages are available under the

IDEA. *See Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania,* 379 F.3d 61, 68 n. 5 (3d Cir.2004) ("We have not settled whether damages are recoverable in an action arising solely under IDEA.").[11] The Supreme Court, however, has spoken on this issue. In *School Committee of the Town of Burlington v. Department of Education of Massachusetts,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the Court held that a party may seek restitution under the IDEA[12] for out-of-pocket expenses that the school district "should have paid all along and would have borne in the first instance had it developed a proper IEP." *Id.* at 371, 105 S.Ct. 1996; *see also Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 12, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). The Court made clear that the IDEA authorized such a monetary award precisely because it did not constitute damages. *See Burlington,* 471 U.S. at 370–71, 105 S.Ct. 1996.

Following *Burlington,* every circuit that has addressed this issue has held that compensatory and punitive damages are not available under the IDEA. *See Blanchard v. Morton Sch. Dist.,* 420 F.3d 918, 921 (9th Cir.2005); *Ortega v. Bibb County Sch. Dist.,* 397 F.3d 1321, 1325–26 (11th Cir. 2005); *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 124–26 (1st Cir.2003); *Gean v. Hattaway,* 330 F.3d 758, 774 (6th Cir. 2003); *Polera v. Bd. of Educ.,* 288 F.3d 478, 485–86 (2d Cir.2002); *Sellers v. Sch. Bd.,* 141 F.3d 524, 526–27 (4th Cir.1998);

11. In *W.B. v. Matula,* 67 F.3d 484 (3d Cir. 1995), we held that money damages are available in a § 1983 action based on an IDEA violation. *Id.* at 494. We overruled that portion of *Matula* in *A.W. v. Jersey City Public Schools,* 486 F.3d 791 (3d Cir.2007) (en banc). In *Jersey City,* we held that because "the IDEA provides a comprehensive remedial scheme[,] ... Congress did not intend § 1983 to be available to remedy violations of the IDEA." 486 F.3d at 803. Nothing in

*Jersey City* intimates disapproval of *Matula's* dictum regarding the potential availability of compensatory damages in IDEA suits.

12. *Burlington* in fact addressed the IDEA's predecessor, The Education of the Handicapped Act, which, for the purposes of this discussion, is in all material respects identical to the IDEA. *Jersey City,* 486 F.3d at 796 n. 8.

*Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 991 (7th Cir.1996); *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir.1996).[13] Those courts have recognized that the "IDEA's primary purpose is to ensure [a] FAPE, not to serve as a tort-like mechanism for compensating personal injury." *Nieves–Marquez*, 353 F.3d at 125. The Seventh Circuit has aptly framed the issue:

> [T]he structure of the statute—with its elaborate provision for educational services and payments to those who deliver them—is inconsistent with monetary awards to children and parents.... [W]e conclude that damages are not relief that is available under the IDEA. This is the norm for social-welfare programs that specify benefits in kind at public expense, whether medical care or housing or, under the IDEA, education.

*Charlie F.*, 98 F.3d at 991 (internal quotation marks and citations omitted). The Fourth Circuit's explanation is likewise persuasive:

> Tort-like damages are simply inconsistent with IDEA's statutory scheme. The touchstone of a traditional tort-like remedy is redress for a broad range of harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages. By contrast, the touchstone of IDEA is the actual provision of a free appropriate public education.... Compensatory or punitive damages would transform IDEA into a remedy for pain and suffering, emotional distress, and other consequential damages caused by the lack of a free appropriate public education. Such a result would be inconsistent with the structure of the statute, which so strongly favors

the provision of and, where appropriate, the restoration of educational rights.

*Sellers*, 141 F.3d at 527 (internal quotation marks, citations, and footnote omitted).

We at least suggested our agreement with the authority outlined above in our en banc decision in *Jersey City*, 486 F.3d 791. In *Jersey City*, we recognized, in light of *Burlington*, that "[t]he district court is authorized to grant 'such relief as the court determines is appropriate,' including attorneys' fees, reimbursement for a private educational placement, and compensatory education." *Id.* at 802; *see Shore Reg'l*, 381 F.3d at 197 (affirming an administrative law judge's order for a school district "to reimburse [the student] for the out-of-district tuition and related costs, including [the student']s reasonable attorneys' fees"); *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 85 (3d Cir.1996). Indeed, in *Bucks County*, we pointed to our earlier broad interpretations of the term "appropriate." 379 F.3d at 67. In line with that expansive view, we also clarified that

> "appropriate" should not be read so narrowly so as to preclude [a plaintiff] from being paid for her time just because she did not write a check to a third party. If we limited reimbursement to actual out-of-pocket expenses, we would give a narrow construction to "appropriate," and this would be contrary to both the Supreme Court's broad interpretation of the term in *Burlington* and our own broad interpretation in *Matula*.

*Id.* at 69.

■ Given the Supreme Court's pronouncement in *Burlington* as well as the plain language and structure of the IDEA, we agree with our sister circuits, and now

**13.** Other circuits have recognized that the weight of authority disfavors the availability of compensatory damages under the IDEA but have not yet decided the issue. *See, e.g., Moseley v. Bd. of Educ. of Albuquerque Pub. Schs*, 483 F.3d 689, 693–94 (10th Cir.2007).

hold, that compensatory and punitive damages are not an available remedy under the IDEA. That language and structure make plain that Congress intended to ensure that disabled children receive a FAPE under appropriate circumstances, not to create a mechanism for compensating disabled children and their families for their pain and suffering where a FAPE is not provided. Accordingly, to the extent the Chambers seek such damages on their IDEA claim, that claim fails as a matter of law.

The Chambers contend, however, that they are not seeking merely compensatory damages. They claim to have incurred expenses because of the School District's alleged shortcomings in providing Ferren with a FAPE. Even if the relief the Chambers now seek—attorney's fees, evaluation costs and travel expenses—is appropriate under the IDEA, an issue we need not decide, the Chambers have waived their right to request it.

The Chambers never asserted before the District Court that they were seeking any damages other than compensatory damages. Indeed, their complaint is rife with prayers for "compensatory damages." (App.44, 47, 50–51.) Nowhere in their pleadings before the District Court is there even an oblique reference to the attorney's fees, evaluation costs and travel expenses they now request. In fact, during the hearing on the School District's summary judgment motion, the District Court several times endeavored to pinpoint the exact types of damages the Chambers sought. In response, the Chambers' attorney made somewhat contradictory remarks on the nature of the

damages his clients wanted. At one point, he stated: "[T]here is no pain and suffering. There is a claim for loss of life's pleasures, because essentially what—and this goes to really the experts, and also the underlying condition of this child." (App. 241.) Later on, he argued about "the touchstone for what is appropriate in these cases. It's an attempt to make the child who is deprived of a free and appropriate education, to the extent possible, to make that child whole. And if that encompasses monetary damages, then they are [sic] appropriate situation." (App.259.)

Similarly, in their opposition to the School District's summary judgment motion, the Chambers maintained that they had "set forth a viable claim for compensatory damages against the School District under [the] IDEA" and "clearly present[ed] a triable issue for compensatory damages under the IDEA." (App.102–03.) They further represented that they had "suffered greatly due to the repeated refusal and failure of the School District to provide their daughter with agreed to and appropriate educational services" and that they "may recover monetary damages due to the School District's violation of the IDEA[.]" (App.107–09.)

In sum, the Chambers unambiguously, and under direct questioning by the District Court, invoked their right to seek compensatory damages alone. Only now, on appeal, do they say they want reimbursement for attorney's fees, evaluation costs and travel expenses. Because they never litigated their right to that relief before the District Court, they have waived their right to do so before us.[14]

14. We note as well that the plain language of the IDEA appears to prohibit the very approach the Chambers have taken. The IDEA clearly states that a party "shall have the right to bring a civil action *with respect to the* *complaint presented* pursuant to this section[.]" 20 U.S.C. 1415(i)(2)(A) (emphasis supplied). In other words, the IDEA provides that a party seeking judicial relief from the decision of state administrative proceedings

*See DIRECTV, Inc. v. Seijas,* 508 F.3d 123, 125 n. 1 (3d Cir.2007) ("It is well established that arguments not raised before the District Court are waived on appeal.") (citing *Belitskus v. Pizzingrilli,* 343 F.3d 632, 645 (3d Cir.2003)).

Accordingly, notwithstanding the District Court's erroneous determination that the Chambers have no standing to pursue their IDEA claim, we will affirm summary judgment for the School District on that claim, as asserted by the Chambers and Ferren.

## B. ADA and RA Claims

In Count One of the complaint, the Chambers allege violations of § 504 of the RA and § 202 of the ADA on both their own and Ferren's behalf.

The District Court determined that the Chambers lacked standing to pursue their RA and ADA claims on their own behalf for much the same reason it found they lacked standing to pursue their IDEA claim under *Collinsgru.*[15] Notwithstanding the District Court's misplaced reliance on *Collinsgru,* we need not address the viability of the Chambers' RA and ADA claims, at least to the extent the Chambers assert those claims on their own behalf. Our review of the record convinces us that the Chambers failed both to press those claims in the District Court and to revive them in their opening brief on appeal. As a consequence, those claims are waived.[16] *See F.D.I. C. v. Deglau,* 207 F.3d 153, 169–70 (3d Cir.2000); *Laborers' Int'l Union of N. Am., AFL–CIO v. Foster Wheeler Corp.,* 26 F.3d 375, 398 (3d Cir.1994).

may do so only to the extent that the party sought such relief in those proceedings.

Here, the hearing officer's April 2004 report recites the nature of the Chambers' complaint. It "addresses two issues: the appropriateness of the [School District's] offer of FAPE for the last two and a half years and the appropriateness of the [School District's] current proposal. *The parents seek relief in the form of an appropriate program and placement as well as compensatory education* for the 2001–2002, 2002–2003 and 2003–2004 school years." (App. 125 (emphasis supplied).) The report, which spans some fifteen pages, recounts the factual and procedural history between the Chambers and the School District, lists the issues under consideration, makes conclusions of law, and orders specific relief. Significantly, nowhere in that report is there any mention of the attorney's fees, evaluation costs and travel expenses the Chambers request on appeal. These circumstances also support a finding that the Chambers have waived their right to that relief. *See, e.g., J.L. v. Mercer Island Sch. Dist.,* 575 F.3d 1025, 1038 (9th Cir.2009) (reasoning that the district court could not consider an issue that the plaintiffs never submitted in their IDEA administrative complaint or due process hearing because that issue was "unexhausted"); *Blackmon v. Springfield R–XII Sch. Dist.,* 198 F.3d 648, 655–56 (8th Cir.1999) (concluding that the parents' failure to raise an issue before the hearing officer was "significant, because under well-established judicial interpretations of the IDEA [their daughter] had an obligation to exhaust her administrative remedies with regard to the issues upon which she seeks judicial review" (citations omitted)).

15. The District Court also found that, to the extent the Chambers sought to remedy alleged RA and ADA violations through § 1983, such an avenue was foreclosed by *Jersey City.* The Chambers do not challenge that finding on appeal.

16. In fact, the only mention the Chambers make of these claims, insofar as they are asserted on their own behalf, is to challenge the District Court's finding that they waived them during the hearing on the summary judgment motion. The Chambers' challenge, however, is limited to the District Court's determination that those claims were waived insofar as they were asserted on Ferren's behalf. Indeed, the Chambers appear to have no quarrel with the District Court's finding that they agreed to waive at least the ADA claim to the extent they sought relief in their own right. (*See* Appellants' Br. 33 (stating that the Chambers' attorney "conceded only to dismiss *Parents'* ADA claims") (emphasis in original and footnote omitted).)

With respect to the Chambers' ADA and RA claims asserted on Ferren's behalf, the District Court concluded that those statutes were merely the predicates for what it perceived to be a § 1983 claim. Relying on our decision in *Jersey City*, in which we held that § 1983 does not offer a plaintiff a remedy for violations of the IDEA or the RA, the District Court found that summary judgment was warranted. The Chambers do not question that finding on appeal. To the extent the Chambers asserted claims directly under the RA and the ADA on Ferren's behalf, the District Court concluded in a footnote that the Chambers had waived those claims:

> It appears from the Amended Complaint as though Plaintiffs assert their Rehabilitation Act and ADA claims separately as well as through the vehicle of § 1983; however, in the Response to Defendant's Motion, counsel seems to pursue the claims only under § 1983. (Resp. at 16.) During oral argument Plaintiffs' counsel confirmed that Plaintiffs are pursuing claims under § 1983, not the individual statutes. Tr. March 13, 2007 at 8.

*Chambers*, 2007 WL 4225584, at *9, 2007 U.S. Dist. LEXIS 88003, at *27 n. 8.

We cannot agree with the District Court's conclusion that the Chambers waived their right to proceed directly under the RA and the ADA. The District Court's reference to a statement made by the Chambers' attorney on page 13 of the hearing transcript is in all likelihood a result of inadvertent error.[17] At that stage of the hearing, the District Court was engaged in a colloquy with the School District's attorney, not the Chambers' attorney. Moreover, later in the hearing the Chambers' attorney clarified that the Chambers fully intended to keep all of their options on the table:

> THE COURT: But it's unclear to me whether you believe you can sustain these dual actions from start to finish, and then you have both an IDEA claim for the parents, and a 1983 case predicated on the IDEA. Just using that as an example.
>
> [PLAINTIFFS' COUNSEL]: Yes, I think you can proceed with both, and I think *Matula* says that you're permitted to—that you can recover directly under the IDEA and Section 504 for a violation, but you can also proceed through a 1983 action and—
>
> . . . .
>
> [A]nd that's why I want to obviously leave myself open. I don't want to foreclose, because I think the courts have suggested there might be slightly different remedies available the way you proceed, and that's what I would suggest.

(App.251.)

This colloquy between the District Court and the Chambers' attorney persuades us that the Chambers did not intend to waive their right to pursue their RA and ADA claims on Ferren's behalf.[18]

---

17. The hearing transcript leaves little, if any, doubt that the District Court's reference was a result of inadvertent error. The District Court stated as follows to the School District's attorney:

> [W]hat is the formulation of the plaintiffs' claims, because in different places, in the amended complaint, I note the Rehabilitation Act Claim, and the ADA Claims were asserted separately, as well as through the 1983 vehicle. I think that that's how we

read it. . . . So, I mean, it may not be the most appropriate question to ask you, but to your ask [sic] your opponent, whether the plaintiffs are pursuing claims under the individual statutes or think they are? (App.208.)

18. We also question the District Court's finding that the Chambers asserted their RA and ADA claims only "through the vehicle of § 1983" based on their opposition to the

█ Because the same standards govern both the Chambers' RA and ADA claims, we may address both claims in the same breath. *McDonald v. Pennsylvania,* 62 F.3d 92, 95 (3d Cir.1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same." (citation omitted)). To prevail on a violation of either of those statutes,[19] the Chambers had to demonstrate that Ferren (1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability.[20] *See Nathanson v. Med. Coll. of Pa.,* 926 F.2d 1368, 1380 (3d Cir.1991) (citing *Strathie v. Dep't of Transp.,* 716 F.2d 227, 230 (3d Cir.1983)).

The parties do not dispute that the first two elements are satisfied. The parties disagree only on the third element: whether Ferren was denied a benefit of an education program because of her disability. In an effort to meet its summary judgment burden, the School District argued before the District Court that Ferren was not denied any educational benefits. According to the School District, it "actively tried to provide an appropriate education setting for Ferren[.]" (App.88.) To buttress its position, the School District pointed to the various educational programs in which Ferren was enrolled over the course of several years, the numerous medical and psychological evaluations she underwent to test her progress, and the several types of special therapies and services she received. These facts are supported by reference to the School District's Statement of Undisputed Material Facts, which in turn is tethered to different parts of the record. In the School District's view, "[t]hese facts show that Ferren was actively participating in school programs and was not discriminated against." (App.89.)

Taking the evidence in a light most favorable to the Chambers, as we must in this posture, we do not believe that the School District met its initial summary judgment burden based on its proffer to the District Court. We have previously said that "the failure to provide a free appropriate public education violates IDEA and therefore could violate [the RA]." *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 253 (3d Cir.1999) (citing *Matula,* 67 F.3d at 492–93.) We think that the record contains enough of a genuine factu-

School District's summary judgment motion. We recognize that the Chambers did state, somewhat confusingly, that "[t]he predicate violation of plaintiffs' rights secured by [the RA and the ADA] is the basis for plaintiffs' civil rights action under 42 U.S.C. § 1983." (App.105.) Elsewhere, however, the Chambers did not suggest that they were abandoning any remedy they might have under those statutes themselves. In short, we think the District Court should have addressed these claims to determine if summary judgment was otherwise proper.

**19.** Section 504 of the RA provides:
No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to dis-

crimination under any program or activity receiving Federal financial assistance.... 29 U.S.C. § 794(a).
Section 202 of the ADA provides:
Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

**20.** The RA requires the additional showing that the program receives federal financial assistance. 29 U.S.C. § 794(a). There is no dispute that this element applies to the School District.

al dispute about whether the School District in fact provided Ferren with a FAPE, not to mention whether the School District otherwise committed RA and ADA violations. We must therefore refrain from wading into this dispute. In light of the District Court's erroneous dismissal of the Chambers' RA and ADA claims based on its misperception of the Chambers' position, and because we do not find summary judgment to be appropriate based on the record in its current incarnation, we will vacate the grant of summary judgment on those claims.

## C. Due Process Claims

In Count Two, the Chambers allege that the School District violated their rights under the Due Process Clause of the Constitution. The District Court bifurcated its treatment of that claim, construing it to assert both procedural and substantive violations. On appeal, the parties do not dispute that tack, and we see no reason to question it.

### 1. Substantive Due Process

■ Turning first to the Chambers' substantive due process claim asserted on their own behalf, the Chambers allege that the School District's failure to provide a FAPE for Ferren has deprived them "of their daughter's companionship and association" and caused them to suffer emotional distress by preventing Ferren from becoming more communicative. (App.47.)

■ The Supreme Court has "observed that the core of the concept of due process is protection against arbitrary action and that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392, 399 (3d Cir.2003) (internal quotation marks omitted) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Thus, to prevail on a substantive due process claim, "a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir.2008) (citation omitted). Furthermore, because "the nature of the conduct that is sufficiently egregious to shock the conscience varies depending on the context," *United Artists Theatre Circuit,* 316 F.3d at 399 n. 5, a court must "determine what level of conduct is egregious enough to amount to a constitutional violation and, then, whether there is sufficient evidence that [the defendant's] conduct rose to that level." *Nicini,* 212 F.3d at 809.

In granting summary judgment on the Chambers' substantive due process claim, the District Court relied almost exclusively on our decision in *McCurdy v. Dodd,* 352 F.3d 820 (3d Cir.2003). In *McCurdy,* a father sued a Philadelphia police officer who had shot and killed his independent adult son. The father alleged that he had a protected liberty interest in the companionship, care, and affection of his son. We found no legal support for that allegation. We began by noting the absence of any Supreme Court recognition of such an interest. We also found no authority in our own case law recognizing such an interest.[21] Finally, we took stock of a circuit

---

21. In *McCurdy,* we noted that we had explicitly declined to address the existence of such an interest in at least two previous cases. *See Schieber v. City of Phila.,* 320 F.3d 409, 423 n. 6 (3d Cir.2003) ("I also express no view on whether the Schiebers, as parents, had a liberty interest in the continued companionship of their adult, emancipated child."); *Freedman v. City of Allentown,* 853 F.2d 1111, 1117 n. 5 (3d Cir.1988) ("In light of our disposi-

split on the issue. For several reasons, we concluded that "a broad expansion of due process protections to encompass McCurdy's proposed definition is unwarranted in this case." *Id.* at 829. First, we reasoned that the parental interest in companionship with a child substantially diminishes when the child reaches adulthood. *Id.* Second, we explained our reluctance to "to extend the Due Process Clause to cover official actions that were not *deliberately directed* at the parent-child relationship[.]" *Id.* (emphasis supplied). Thus, we found that the police officer's shooting of McCurdy's son, while deliberate in a technical sense, did not amount to a due process violation because it did not aim to sever the parent-child relationship. *Id.* at 829–31.

*McCurdy* specifically addresses situations involving independent adult children. *Id.* at 830 ("[W]e hold that the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child."). Indeed, we recognized in that case that "the cases extending liberty interests of parents under the Due Process Clause focus on relationships with *minor* children." *Id.* at 827 (emphasis in original). Ferren, like McCurdy's son, has reached the age of majority under Pennsylvania law. See 23 Pa. Cons.Stat. § 5101(b). In *McCurdy*, however, we acknowledged that "adulthood is often a fact-specific inquiry heavily dependent on the unique context of each situation." 352 F.3d at 830. For that reason, we explained that states often "recognize the more fluid concept of 'emancipation,' as well as adulthood[,]" and that "there may be rare instances where the more flexible concept of emancipation more appropriately fits the parent-child relationship at issue, we do not reach the issue whether parents of an adult decedent may maintain a

sue." *Id.* (citations and footnote omitted). As an example, we briefly discussed the Superior Court of Pennsylvania's decision in *Geiger v. Rouse*, 715 A.2d 454 (1998), in which the child was over eighteen but was "'totally dependent upon her parents as a result of her moderately severe cerebral palsy,' severe depression, and lack of means of employment." *McCurdy*, 352 F.3d at 830 n. 8 (quoting *Geiger*, 715 A.2d at 458). We noted in dicta that "we can conceive of situations where parents in similar circumstances would have a relationship with their adult child which is indistinguishable from a relationship with a minor child." *Id.* Because McCurdy presented no evidence that his son was not emancipated at the time of his death, we held that he had failed to make a threshold showing of a constitutional violation.

The scenario we described in dicta in *McCurdy* is precisely the one that is presented in this case. The record leaves no room for doubt that Ferren functions on the level of a young child and is completely dependent on her parents in nearly every aspect of her daily life.

■ As we noted in *McCurdy*, the Supreme Court has made clear that the "guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662 (1986) (emphasis in original) (collecting cases); *see also id.* at 328, 106 S.Ct. 662 ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.") (emphasis in original). The Supreme Court's statement on this point does not differentiate between adult and minor or unemancipated offspring. Simi-

section 1983 claim.").

larly, in *McCurdy,* we did not, as a general matter, draw any distinction between children and adults insofar as we noted the requirement that executive conduct be deliberate in order to give rise to a due process violation: "In the context of parental liberty interests, . . . the Due Process Clause only protects against deliberate violations of a parent's fundamental rights—that is, where the state action at issue was specifically aimed at interfering with protected aspects of the parent-child relationship." 352 F.3d at 827–28.[22]

In light of the Supreme Court's clear statements that only deliberate conduct implicates due process, we now extend our holding in *McCurdy* to situations involving minor and unemancipated children. In doing so, we reiterate that only deliberate executive conduct in such instances may give rise to a substantive due process violation. The Chambers have failed to allege, much less adduce competent evidence, that the School District deliberately sought to harm their relationship with Ferren, and thus their substantive due process claim fails as a matter of law.

▮ We next address the Chambers' substantive due process claim asserted on Ferren's behalf. The Chambers essentially allege that the School District violated Ferren's substantive due process rights by consistently denying her a FAPE over the course of many years. In their view, the School District's knowledge that Ferren was denied a FAPE and indifference to that denial shocks the conscience. The District Court did not explicitly address this claim in its ruling, evidently concluding that only the parents had alleged a substantive due process violation. We read the complaint, however, to allege that Ferren's own substantive due process rights were violated. On appeal, the Chambers restate their belief that the School District violated Ferren's substantive due process rights.

As we have already explained, to prevail on a substantive due process claim a plaintiff ordinarily "must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey,* 523 F.3d at 219 (citation omitted). Merely negligent conduct, on the other hand, does not suffice. *Lewis,* 523 U.S. at 849, 118 S.Ct. 1708. "In between these two extremes is a middle range of conduct known as deliberate indifference, which may rise to the level of conscience-shocking in certain circumstances." *A.M. v. Luzerne County Juvenile Det. Ctr.,* 372 F.3d 572, 579 (3d Cir.2004) (citation omitted). "The question of whether conduct amounting to deliberate indifference is sufficient to shock the conscience requires an exact analysis of the circumstances in a given case." *Id.* (alteration, internal quotation marks and citation omitted). Where, as

---

**22.** We are not alone in requiring proof of deliberate conduct by the state, regardless of whether a child is a minor or an adult. *See Robertson v. Hecksel,* 420 F.3d 1254, 1260 (11th Cir.2005) (rejecting a substantive due process claim where the plaintiff "does not allege the state has interfered with how she raises her minor child" and "does [not] claim the state action targeted her custody of her minor child"); *Russ v. Watts,* 414 F.3d 783, 789–90 (7th Cir.2005) ("Under any standard, finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court."); *Ortiz v. Burgos,* 807 F.2d 6, 8 (1st Cir.1986) ("[W]e think it significant that the Supreme Court has protected the parent *only when the government directly acts to sever or otherwise affect his or her legal relationship with a child.* The Court has never held that governmental action that affects the parental relationship only incidentally . . . is susceptible to challenge for a violation of due process.") (emphasis supplied).

here, a state actor has had an opportunity to actually deliberate, we employ the deliberate indifference standard. *See id.*

In *Luzerne,* we explained how the deliberate indifference standard is applied to a governmental entity in a § 1983 action pursuant to *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978):

> A governmental entity ... cannot be liable under a theory of respondeat superior or vicarious liability. Rather, in order for a governmental entity (generically referred to as a "municipality") to be liable for the violation of a constitutional right under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation. A plaintiff can establish causation by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.

*Luzerne,* 372 F.3d at 580 (internal quotation marks and citations omitted). ▇▇▇ "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3d Cir.1996) (alteration, internal quotation marks and citation omitted). Customs are "practices of state officials so permanent and well settled as to virtually constitute law." *Id.* (alteration, internal quotation marks and citation omitted).

"[I]t is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. Phila.,* 895 F.2d 1469, 1480 (3d Cir.1990). "Once a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir.2000) (internal quotation marks and citation omitted). "If ... the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id.* (internal quotation marks and citations omitted).

The Chambers have not identified any policies or customs of the School District on the basis of which a reasonable finder of fact could premise liability. Instead, they have only alleged that because of the School District's "policy or custom of intentionally refusing to provide clearly necessary and appropriate educational services[ ] to severely developmentally impaired students like Plaintiff, Ferren Chambers has been deprived of a free and appropriate public education." (App.46.) Significantly, at summary judgment a non-moving party may not rest on mere allegations.[23] *Trap Rock Indus.,*

---

23. The only actual evidence on which the Chambers rely to show the existence of the School District's deliberate indifference is various snippets of deposition testimony of Henry Gross, the School District's Director of Special Education Services. When asked about the provision of educational services to Ferren, Gross testified as follows:

> I think there was a great concern of mine that not only was [sic] the two periods of

speech not being provided to Ferren, and I made numerous calls over numerous time periods and ... I was very upset that this had not been provided.... And I was calling and writing e-mails frequently in that time period to get those services provided, and finally they were provided. But again, these were instances where in the region neither my superintendent nor I could assign speech therapists, could assign trans-

*Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL–CIO,* 982 F.2d 884, 890 (3d Cir.1992).

The Chambers likewise fail to point to any "practices ... so permanent and well settled as to virtually constitute law." *Berg,* 219 F.3d at 275 (quotation marks and citation omitted). Indeed, we have previously rejected a § 1983 claim where the plaintiff "provided no evidence that [the school district's] policy is to ignore the responsibilities imposed by IDEA. Rather the evidence presented was that [the school district] failed to fulfill its responsibilities." *Ridgewood,* 172 F.3d at 252. While it is certainly true that the School District in this case too frequently failed to fulfill commitments it had made with respect to Ferren's education, the record does not support a finding that the School District's policy is to ignore the responsibilities imposed by the IDEA. Accordingly, we see no reason to disturb the District Court's ruling on the Chambers' substantive due process claim on Ferren's behalf.

### 2. Procedural Due Process

■ The Chambers also allege a violation of procedural due process. The District Court construed the complaint to allege that the School District refused to schedule mandatory conferences with the Chambers and intentionally misplaced their requests for due process hearings. On appeal, the Chambers do not explicitly dispute that these allegations form the basis of their procedural due process claim.[24]

■ To prevail on "a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown,* 455 F.3d 225, 234 (3d Cir.2006) (internal quotation marks and citation omitted). "In evaluating a procedural due process claim, we first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." *Baraka v. McGreevey,* 481 F.3d 187, 205 (3d Cir.2007) (quotation marks and citation omitted). Property interests are "created and their dimensions are de-

portation or aides with contracted services. We had to rely on the private school office and those other offices within the Family Resource Network and later the Office of Specialized Service to provide this. (App.159–60.)

The Chambers' reliance on this testimony to support their contention that the School District was deliberately indifferent to the implementation of Ferren's educational plan, is misplaced. First, that testimony evinces the School District's bona fide attempts to implement that plan in the face of great logistical hardship, not a deliberate indifference to Ferren's educational needs. Second, the fact that the School District's attempts ultimately proved inadequate on several fronts does not demonstrate that the School District was operating according to any official policy designed to derail the implementation of that

plan or otherwise to deny Ferren educational benefits to which she was statutorily entitled.

**24.** The Chambers do, however, spotlight a litany of other alleged conduct by the School District that they argue constitutes a deprivation of procedural due process. The lion's share of that conduct occurred more than two years before the complaint was filed, and thus any portion of the Chambers' due process claim premised on that conduct is time-barred. *See McGovern v. City of Phila.,* 554 F.3d 114, 115 n. 2 (3d Cir.2009) (noting that § 1983 claims are governed by a two-year statute of limitations in Pennsylvania); *Sameric Corp. of Del., Inc. v. City of Phila.,* 142 F.3d 582, 599 (3d Cir.1998) ("[B]ecause Pennsylvania's statute of limitations for personal injury is two years, Sameric's due process claims are subject to a two-year statute of limitations." (citations omitted)).

fined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* State law does not define the parameters of due process for the purposes of the Fourteenth Amendment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Rather, federal law defines those parameters. *Witkowski v. Welch*, 173 F.3d 192, 205 (3d Cir.1999).

The first procedural due process violation the Chambers allege stems from the School District's failure to hold conferences with them. The District Court assumed that the Chambers meant prehearing conferences, as then-defined by 22 Pa. Code § 14.161, *reprinted in* 31 Pa. Bull. 3032 (June 9, 2001). Neither party contests that assumption, and we have no reason to do so.

Section 14.161, at the time this lawsuit was commenced, stated, in pertinent part, as follows: "When a parent requests and the school district or early intervention agency in the case of a young child agrees to participate in a prehearing conference, the conference shall be convened within 10 days of receipt of the parent notice...." 22 Pa.Code § 14.161(2), *reprinted in* 31 Pa. Bull. 3032 (June 9, 2001). The District

Court found that § 14.161 "requires the agreement of both parties to a pre-hearing conference." *Chambers*, 2007 WL 4225584, at \*7, 2007 U.S. Dist. LEXIS 88003, at \*22. We agree. The Chambers' perception that § 14.161 grants them a property interest is predicated on a misreading of that provision. Section 14.161 gives the Chambers no more than a "unilateral expectation" of a prehearing conference.[25] *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. It plainly does not vest them with a "legitimate claim of entitlement." *Id.*

The second procedural due process violation the Chambers allege is the School District's misplacement of their November 2003 request for a due process hearing. It is undisputed that: the School District failed to forward that request to the Office for Dispute Resolution; the Chambers directly contacted the Office for Dispute Resolution in December 2003 to inquire about their request; a due process hearing was held in March 2004 following the Chambers' inquiry. The District Court found that, despite the School District's failure to forward the Chambers' hearing request, any deprivation was remedied when the Office for Dispute Resolution, at the Chambers' prompting, eventually, though belatedly, convened a hearing, the result of which was favorable to the Chambers.

At the time the Chambers filed their complaint, 22 Pa.Code § 14.162, on which the Chambers evidently relied to show the existence of a property interest, provided, in relevant part, that "[a] hearing shall be held within 30 days after a parent's or school district's initial request for a hear-

---

**25.** In fact, the very evidence on which the Chambers rely to demonstrate the existence of a property interest in prehearing conferences actually undercuts, rather than bolsters, their position. They point us to the hearing officer's April 2004 report, in which the hearing officer stated that "[n]othing about the [School District's] decision to waive the pre-hearing conference ... violates the state special education regulations *since either party may waive a pre-hearing.*" (App. 131. (emphasis supplied and citation omitted).)

ing." 22 Pa.Code § 14.162(q)(1), *reprinted in* 31 Pa. Bull. 3033 (June 9, 2001). There is no dispute that a hearing was not held within thirty days of the Chambers' submission of their request. We will assume for the sake of argument that the Chambers have identified a property interest created by state law. *See, e.g., Thomas v. Town of Hammonton*, 351 F.3d 108, 113 (3d Cir.2003) (assuming *arguendo* that the plaintiff had a property right where state law mandated notice and a hearing before an employee could be terminated). Their claim is nevertheless fatally flawed. We have explained that although § "1983 does not include any *mens rea* requirement in its text, . . . the Supreme Court has plainly read into it a state of mind requirement specific to the particular federal right underlying a § 1983 claim." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir.1994) (citing *Parratt v. Taylor*, 451 U.S. 527, 532, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Accordingly, we have recognized that "a negligent deprivation of due process will not sustain a § 1983 claim." *Id.* (citation omitted). Instead, "a plaintiff who wishes to sustain a § 1983 claim based upon a violation of procedural due process must, at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process." *Id.* (quoting *Daniels*, 474 U.S. at 333–34, 106 S.Ct. 662).

In this case, the record offers no evidentiary support for the Chambers' claim that the School District intentionally misplaced or failed to forward their hearing request, or that the School District exhibited recklessness or gross negligence by misplacing or failing to forward that request. The record suggests only that the School District's error—and the School District concedes that it made a mistake—was negligent at most. Such conduct is not actionable under § 1983 under these circumstances. The Chambers' procedural due process claim therefore fails as a matter of law.

## D. Equal Protection

 Count Three of the complaint alleges violations of Ferren's rights under the Equal Protection Clause of the Constitution. Specifically, it alleges that the School District intentionally discriminated against disabled students such as Ferren. The District Court granted summary judgment for the School District on this claim, reasoning that the Chambers, who were asserting the claim on Ferren's behalf, had failed to adduce any evidence to support it.

 The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "This is essentially a direction that all persons similarly situated should be treated alike." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir.2005) (citation omitted). "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Andrews*, 895 F.2d at 1478 (citation omitted). "They must demonstrate that they received different treatment from that received by other individuals similarly situated." *Id.* (internal quotation marks and citation omitted).

We must reject the Chambers' equal protection claim, since we agree with the District Court that the Chambers fell far short of their burden of establishing that the School District purposefully treated Ferren differently from similarly situated students. In its summary judgment motion, the School District argued that the Chambers "have done no discovery to de-

termine if Ferren was treated differently that [sic] these 'other similarly situated students.' " (App.90.) In other words, the School District sought to meet its summary judgment burden by highlighting "the absence of a genuine issue of material fact" with respect to the Chambers' equal protection claim. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir.2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the School District met its initial burden, it was incumbent on the Chambers to show the existence of a genuine issue of material fact. They plainly failed to do so. In their opposition to the School District's motion, the Chambers elected to rebut the School District's argument with no more than a conclusory statement that Ferren was "treated differently than other disabled children to whom the school district has met their obligations [sic]." (App.107.) That effort, standing alone, was deficient, as the record does not reflect that the Chambers presented any competent evidence in support of their claim, as they were required to do. *See Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir.1972) ("Conclusory statements [and] general denials ... [are] insufficient to avoid summary judgment." (collecting cases)). Given this evidentiary deficiency, we will affirm the District Court's grant of summary judgment on the Chambers' equal protection claim on Ferren's behalf.[26]

## IV. CONCLUSION

The circumstances of this case tug forcefully at the heartstrings. Mr. and Mrs. Chambers' resolve and dedication to Ferren are both admirable and compelling. The hardship they have endured for more than two decades in addressing Ferren's daily challenges no doubt has been compounded by their struggle to obtain an appropriate education for her. These concerns notwithstanding, the compensatory relief the Chambers seek for themselves is unavailable under the IDEA, and they have waived their right to relief under the other statutory schemes they have invoked. The ADA and the RA, however, may provide an avenue to relief for Ferren.[27] The Chambers cannot proceed on any of their constitutional claims, as they failed to meet their summary judgment burden on those claims.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment on the Chambers' IDEA claim, both on their own and Ferren's behalf; their ADA and RA claims asserted in their own right; and their constitutional claims, on both their own and Ferren's behalf. We will vacate the District Court's grant of summary judgment on the Chambers' ADA and RA claims asserted on Ferren's behalf and remand to the District Court

---

**26.** Before the District Court, the Chambers' equal protection claim was premised on the theory that Ferren was treated differently from similarly situated disabled students. On appeal, the Chambers argue that Ferren was treated differently from students without disabilities. Because that particular argument is advanced for the first time on appeal, it is waived. *See Del. Nation v. Pennsylvania*, 446 F.3d 410, 416 (3d Cir.2006) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal."). We sometimes decline to find waiver

"when manifest injustice would result from a failure to consider a novel issue." *Gass v. Virgin Islands Tel. Corp.*, 311 F.3d 237, 246 (3d Cir.2002) (internal quotation marks and citations omitted). No departure from the general waiver rule is warranted here, as the Chambers also have failed to present any evidence to buttress their newly minted equal protection theory.

**27.** We express no opinion on the viability of Ferren's ADA and RA claims.