NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1770
_____

LE T. LE,
                    Appellant

v.

CITY OF WILMINGTON;
JOSEPH F. CAPODANNO, JR;
JAMES J. O'DONNELL

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civ. No. 1-08-cv-00615)
District Judge: Honorable Leonard P. Stark

_____

Submitted Under Third Circuit LAR 34.1(a)
January 23, 2012
_____

Before: FISHER, GREENAWAY, JR., *Circuit Judges* and JONES[*], *District Judge*.

_____

(Opinion Filed: April 24, 2012)
_____

OPINION
_____

_____

[*] Hon. John E. Jones III, District Judge, United States District Court for the Middle District of Pennsylvania, sitting by designation.

GREENAWAY, JR., *Circuit Judge*.

Appellant Le T. Le ("Le"), a former employee of the City of Wilmington ("Wilmington"), Information Technologies Department, filed suit against Wilmington alleging, *inter alia*, copyright infringement, employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and prima facie tort under Delaware state law. During the discovery process, the District Court denied Le's request to require Appellees to identify the corresponding category of document or interrogatory request for each produced discovery document as well as his motion to compel additional deposition testimony from a former employee of Wilmington's Law Department. The District Court also granted Appellees' motions for summary judgment relating to the discrimination claims (Counts III-VIII) and the copyright claims (Counts I-II). Finally, the District Court granted summary judgment to all Appellees regarding Le's state law prima facie tort claims. Le now appeals each of these determinations.

Because we hold that there is no genuine dispute of material fact remaining with respect to either the discrimination or the copyright claims, we will affirm the District Court's grant of summary judgment on Counts I-VIII. We will also affirm the District Court's decision to deny Le's discovery requests as an appropriate application of Rule 34 of the Federal Rules of Civil Procedure ("Rule 34") and attorney-client privilege.

2

# I. BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Le was an Information Analyst II in the Network Division working for the City of Wilmington. He is of Vietnamese descent. During his tenure with Wilmington, Le developed a computer software program, hereinafter "Instant Ticketing program" or "the Work." The Instant Ticketing program was developed to assist Wilmington's Department of Licenses and Inspections ("L&I") in tracking traffic citations. Le claims that he developed the Instant Ticketing program prototype exclusively at home, on his own time. However, he admits to installing the program on Wilmington's computer network for testing and feedback. Wilmington began using the Instant Ticketing program and members of the L&I department provided feedback in the ongoing development of the program.

On May 21, 2007, Le filed a Certificate of Registration with the United States Copyright Office. A few weeks later, he removed the source code of the program from Wilmington's network server without permission from his supervisor, Terry Jones. In his deposition, Le testified that he told the commissioner of L&I, Jeff Starkey, and Jones that he was going to take his belongings with him when he left. He stated that he believed this to include the program. Le's removal of the source code rendered the Instant

Ticketing tool useless.[1]  Le was then suspended from his job, directed to reinstall the

Instant Ticketing program and threatened with prosecution if he did not reinstall it.  After

he reinstalled the program, Wilmington terminated his employment.

While Le was developing the Instant Ticketing program, he was also working on

other matters in the Network Division, alongside two individuals of African-American

descent.  In preparation for the 2008 Fiscal Year Budget, and because of its desire to cut

costs, Wilmington considered outsourcing the functions of the Network Division.

Although the decision would not be formalized until the City Council voted on it,

Wilmington informed the potentially affected staff members of its intention to outsource

the division and the employment options for the staff.  These employment options

included placement in other positions (if qualified), shifting to other positions with

similar pay scales, seeking employment with other entities and lay-offs.  Ultimately, the

Wilmington City Council passed the budget as proposed, which led to the elimination of

the Network Division.

Contrary to Wilmington's articulation of business necessity as the driving force

behind the Network Division's demise, Le alleges that the decision to outsource the

Network Division was racially motivated.  Specifically, Le notes that the Division was

replaced by an all-white team from an outside contractor, Diamond Technologies.  Le

---

[1] The source code is the part of the Instant Ticketing program that contains the computer programming language that enables the program to run as directed.  In this case, the source code is one of the most critical parts of the Work because it contains the computer programming language that makes the program run.

also claims that Appellees Joseph Capodanno ("Capodanno"), Manager of Integrated Technologies, and James O'Donnell ("O'Donnell"), Wilmington's Director of Integrated Technologies, made derogatory remarks about their difficulty in understanding his accent as well as other racially insensitive remarks.

As a consequence of these actions, Le filed suit. After discovery, the District Court granted summary judgment in favor of Appellees – Wilmington, Capodanno, and O'Donnell – on Le's discrimination and copyright claims. Le filed a timely notice of appeal, challenging the summary judgment rulings. In addition to the summary judgment rulings, Le also appeals the District Court's oral rulings on February 3, 2010 and February 16, 2010 stating that Appellees were not required to identify documents produced in response to specific discovery requests or interrogatories.[2] Le also appeals the District Court's May 5, 2010 oral ruling denying his request that the District Court vitiate the attorney-client privilege regarding a former employee of Wilmington's Law Department.

## II. <u>JURISDICTION AND STANDARD OF REVIEW</u>

The District Court had jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1343. We have appellate jurisdiction, pursuant to 28 U.S.C. § 1291.

We review the District Court's order granting summary judgment de novo. *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). "To that end, we are

---

[2] These rulings were memorialized in the Amended Scheduling Order, entered February 19, 2010.

5

required to apply the same test the [D]istrict [C]ourt should have utilized initially." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009) (internal quotation marks omitted).

"Our standard of review with regard to the [D]istrict [C]ourt's management of discovery is abuse of discretion." *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 778 (3d Cir. 2000) (citation omitted). "We will not upset a [d]istrict [c]ourt's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain crucial evidence." *Id.* (quoting *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982)). However, we will exercise plenary review where the decision is based upon the interpretation of a legal issue, such as the Rules of Civil Procedure. *EBC Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 264 (3d Cir. 2010).

We exercise plenary review over discovery orders regarding claims of attorney-client privilege. *Tucker v. Fischbein*, 237 F.3d 275, 288 (3d Cir. 2001).

### III. ANALYSIS

We address five issues on appeal: first, Le's argument that genuine disputes of material fact exist precluding the grant of summary judgment on his copyright infringement claims; second, whether genuine disputes of material fact exist precluding the grant of summary judgment on the employment discrimination claims; third, whether the District Court erred in dismissing Le's prima facie tort claims under Delaware state law; fourth, whether the District Court erroneously applied Rule 34 to deny Le's request for specified document identification during discovery; and fifth, whether the District

6

Court erred in refusing to compel testimony from a former Wilmington lawyer based on attorney-client privilege.

a)  Summary Judgment Rulings

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc) (citing Fed. R. Civ. P. 56(c)).[3] "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur*, 601 F.3d at 216 (citation omitted). In determining whether summary judgment is warranted "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chambers*, 587 F.3d at 181. "Further, [w]e may affirm the District Court's order granting summary judgment on any grounds supported by the record." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009).

---

[3] FED. R. CIV. P. 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word — genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

7

1) Copyright Claims

The District Court granted summary judgment on the copyright claim, finding that the Instant Ticketing program was a work made for hire and that, consequently, Le did not hold a copyright in the program. In the alternative, the District Court found that even if Le had a copyright in the program, his conduct granted Wilmington an implied and irrevocable license in the Work. On appeal, Le argues that his copyright claims stem from Wilmington's June 5, 2007 act of forcing him to place his source code back on its network after he registered for a copyright in May of that year.[4] As such, he suggests that the two principal questions are whether the program was a work made for hire and whether the City's letters transferred any interest it had in the Work to Le.

Our review of the record indicates that there is no genuine dispute of material fact regarding the copyright claim because Le has no copyright in the Work.

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes [of the Copyright Act], and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

---

[4] Le also argues that Wilmington committed copyright infringement by using the Code after allegedly transferring rights in the Code to him through a series of letters to his counsel in August 2007.

17 U.S.C. § 201(b). Neither party disputes the fact that Le was employed with Wilmington when he developed the program. Therefore, the primary question is whether the Work was prepared for the employer, Wilmington.[5]

Le contends that he created the Work exclusively during his personal time outside of the office and that development of the source code was not within his job description. There is no dispute that he developed the Work for the purpose of helping the L&I division reduce its workload and reliance on paper ticketing. Additionally, the evidence suggests that Le used sample paper tickets and other resources from Wilmington (such as feedback from the L&I division) in developing the program and its source code. As the District Court noted, Le admitted to reusing and modifying code from files he had created for other Wilmington owned programs in creating the source code for the Instant Ticketing program. Finally, Le testified that the three year gap between the completion of the source code and the copyright registration was based on the implementation of the program which involved testing by the L&I, layout changes and other modifications. For these reasons, we will affirm the District Court's finding that the Instant Ticketing

---

[5] Le posits that there are factual disputes regarding whether the Work was created within the scope of his employment. He argues that it was not within the scope of his employment because his job description did not list computer programming as the work that he was employed to do. We find such a narrow position regarding the scope of employment unpersuasive. *See* Restatement (Second) Agency § 229(1) ("To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized"). Rather, we suggest that the more relevant question is whether he created the program while an employee and for the benefit of his employer.

program was created within the scope of Le's employment, for the benefit and use of his employer. *See* Restatement (Second) Agency § 229(1) ("To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized"). Consequently, there is no genuine dispute of material fact regarding whether the Instant Ticketing program and source code qualify as a work made for hire.

Because we affirm the District Court's conclusion that the Instant Ticketing program was a work made for hire, we need not reach its alternative conclusion that Le granted Wilmington an implied and irrevocable license in the Work. Nonetheless, we would also affirm the District Court's grant of summary judgment on this ground because there is no genuine dispute of material fact regarding: (1) Wilmington's request that a program be created to alleviate issues with paper ticketing; (2) Le's creation and development of the Work with the assistance of other members of the L&I department; and (3) Le's knowledge of and intent that Wilmington use the Work for the purpose of issuing tickets. *See MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991).

We also find that Wilmington did not transfer its copyright interest to Le in its August 2007 exchange of letters. Le contends that Wilmington transferred any copyright ownership it had through two letters exchanged in August 2007 ("August 2007 letters"). *See* 17 U.S.C. § 201(b) (acknowledging that the rights to a work made for hire may vest in a party other than the employer if the parties have expressly agreed to such in a written

10

instrument signed by them). "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).

In the letters, Wilmington emphasized that Le had no copyright in the source code as a work made for hire and that the source code was its property. Wilmington then stated that it would, nonetheless, allow Le to keep the source code, even though the city owned it. In its August 13, 2007 letter, Wilmington stated that it had discontinued use of the computer (source) code and highlighted its shortcomings. In its August 29, 2007 letter, Wilmington again reiterated that it rejected Le's purported ownership of the copyright, but stated that it would not expend time and money contesting the issue of ownership.

Such statements do not constitute an instrument of conveyance or memorandum of transferred ownership interest, as required by 17 U.S.C. § 204(a). *See e.g.*, *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 831 (3d Cir. 2011) ("An assignment of a copyright is a manifestation of the assignor's *intention to transfer* [the copyright] by virtue of which the assignor's [copy]right ... is extinguished in whole or in part and the assignee acquires [the copyright].") (emphasis added). To the contrary, the letters clearly express an unwillingness to acknowledge Le's ownership of the copyright. Additionally, Wilmington's disinterest in spending money to contest Le's claims does not qualify as a manifestation of its intent to transfer the copyright itself, thereby extinguishing its own

11

rights in whole or in part. *See Barefoot Architect*, 632 F.3d at 831. Consequently, there is no genuine dispute of material fact regarding copyright ownership. We will affirm the District Court's grant of summary judgment regarding the copyright claims.

2) Employment Discrimination Claims

Le further asserts that the District Court erred in granting summary judgment on his employment discrimination claims.[6] In an employment discrimination case, the complainant bears the initial burden of establishing a prima facie case of racial discrimination. Once established, the burden shifts to the employer to establish a legitimate, nondiscriminatory reason for its actions. If the employer presents sufficient reasons for its actions, the burden shifts back to the complainant to show that the rationale is pretextual. *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).

The District Court held that Le failed to make out a prima facie case that his termination gave rise to an inference of unlawful discrimination. *See Jones*, 198 F.3d at 410-11.[7] In the alternative, the District Court concluded that even if Le had established a

---

[6] Le brought an employment discrimination claim against Wilmington for violation of Title VII of the Civil Rights Act (Count III) and against Capodanno and O'Donnell for violation of 42 U.S.C. §§ 1981, 1983 (Counts IV and V). Le also alleged that Capodanno and O'Donnell engaged in a conspiracy to interfere with his civil rights, in violation of 42 U.S.C. § 1985.

[7] In this case, we lent our imprimatur to a district court's articulation of the factors considered in establishing a prima facie case:

[A] prima facie case is established when a plaintiff shows the following: (1) that he is a member of a protected class; (2) that he is qualified for the position; (3) that he "was either not hired or fired from that position; (4)

12

prima facie case of discrimination, he failed to present evidence that the non-discriminatory justifications articulated by Wilmington – the outsourcing of the Network Division and Le's act of removing the Instant Ticketing source code from Wilmington's network – were mere pretexts for discrimination.

Le asserts that the evidence in the record establishes a prima facie case for employment discrimination. Specifically, he contends that Wilmington's decision to terminate his employment and replace the Network Division with an all-white team from Diamond Technologies establishes the inference of discrimination necessary to establish a prima facie case. We disagree.

Wilmington presented evidence indicating that Diamond Technologies was an independent contractor and that Wilmington had no influence on the Diamond Technologies's hiring or selection of the team replacing the Network Division. Wilmington also presented evidence that there were performance issues in the Network Division. Le did not refute Wilmington's evidence on this point with any contradictory facts from which one could draw an adverse inference. Although Le asserts that replacement by the all-white team combined with evidence of past discriminatory treatment – namely, alleged statements about not being able to understand him and other comments about African-American employees – establish an inference of discrimination,

> under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class.

*See Jones*, 198 F.3d at 410-11 (internal quotation marks and citation omitted).

13

we again disagree. Such facts are not sufficient to establish a prima facie case of discrimination. We will affirm the District Court's conclusion that Le failed to establish a prima facie case of employment discrimination.[8]

After finding that Le failed to assert a prima facie discrimination case under federal law, the District Court granted summary judgment on his prima facie tort claim under Delaware law on the ground that such claims were not recognized in the employment context.[9] We agree. *See Lord v. Souder*, 748 A.2d 393, 403 (Del. 2000) ("We view [complainant]'s prima facie tort claim to be inconsistent with the employment at-will doctrine and affirm its dismissal."). Le attempts to distinguish his allegations from the line of wrongful termination cases dismissed by the Delaware Supreme Court, noting that his allegations focus on alleged threats to prosecute him for theft and alleged retaliation against him as the purported copyright owner of the Instant Ticketing program. We find this distinction unpersuasive because it fails to address the Delaware Supreme Court's primary concern of maintaining consistency with the at-will employment

---

[8] Alternatively, even if we found that Le established a prima facie case, we would still affirm the District Court's grant of summary judgment on the ground that Le failed to establish that Wilmington's legitimate, nondiscriminatory explanations for terminating his employment (i.e., budget considerations and Le's act of impermissibly removing the source code from the network) were pretexts for discrimination.

[9] Delaware law defines a prima facie tort as an intentional infliction of harm "resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful and which acts do not fall within the categories of traditional tort." *Lord*, 748 A.2d at 402-03.

doctrine.  Consequently, we will affirm the District Court's grant of summary judgment on this ground.[10]

b)  Rule 34

During the discovery phase of the case, Le requested that the District Court require Appellees to identify the category of document or interrogatory request to which each electronic discovery document was responsive.  The District Court denied the request, finding that Appellees had satisfied their obligations under Rule 34 by producing the documents in the manner in which they were kept with the exceptions outlined by the agreement with Le.  Le now appeals the District Court's ruling, arguing that the Court misconstrued the requirements under Rule 34 or otherwise abused its discretion.[11]

Rule 34 states, in relevant part:

Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

---

[10] Even if we found Le's distinction to be theoretically persuasive, the record indicates no evidence supporting this allegation.  Therefore, no genuine dispute of material fact exists regarding this claim.

[11] Contrary to Le's assertions, the District Court did not construe Rule 34 in issuing its discovery ruling but rather applied the Rule in light of Le's request.  Therefore, we review the decision for abuse of discretion. *See EBC Inc.*, 618 F.3d at 264.

(iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E). The District Court applied this rule and concluded that Appellees had fulfilled their obligations under the Rule by producing the documents as they were normally kept, producing them in paper form and limiting them to the agreed upon search terms. While Le focuses on the language in Rule 34(b)(2)(E)(i) referencing the labeling of documents, we note that such labeling is not required where the party otherwise complies with the rule by producing the documents as they are kept in the normal course of business. Le's complaint does not take Wilmington to task for not substantially complying with the discovery requests in this instance. As such, we find no abuse of discretion in the District Court's ruling. We will affirm the District Court's ruling on this ground.

c) <u>Attorney-client privilege</u>

Finally, Le asserts that the District Court erred in refusing to compel testimony from a former lawyer working in Wilmington's legal department, Mr. Mili. During a pre-trial deposition, Le asked Mili specific questions about his process and role in preparing the two August 2007 letters from Wilmington to Le's counsel. In the letters, Wilmington stated that Le did not have a copyright interest in the Instant Ticketing source code and that it would not contest his continued possession of the source code because it was developing its own higher-quality program. During the deposition, Le's counsel asked Mili whether he had conducted an investigation in preparing the letters, what his opinion was of the letter and if he could identify personnel who had provided

16

information for the letters. Mili declined to answer these questions, invoking attorney-client privilege, and the District Court concluded that this was a proper invocation of the privilege. Le now appeals the District Court's ruling arguing that the application of the privilege was overly broad and that the substance of the information that he requested was not covered by the privilege.

We hold that attorney-client privilege was properly applied here. We will affirm the District Court's ruling. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) ("[Attorney-client privilege] applies to . . . (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." (internal quotation marks and citation omitted)).

Le, invoking the disclosure rule, argues that Wilmington waived its attorney-client privilege by disclosing the letters prepared by Mili to Le and his counsel. The disclosure rule applies when a client "shares a privileged communication with a third party." *Id*. at 361. Here, the letters themselves were the result of communications between a client and lawyer. Any waiver of the attorney-client privilege must be invoked by the client. While Wilmington shared the information and views stated in the letter, it did not share the privileged information requested during the deposition (i.e., the nature of the investigation and conversations that led up to the drafting of the letters or the names of the information sources). Therefore, Wilmington engaged in no activity from which one could infer a waiver of the privilege.

For these reasons, we will affirm the District Court's denial of Le's motion to compel additional deposition testimony from Mili, pursuant to Rule 34.

## IV. <u>CONCLUSION</u>

For the reasons stated above, we will affirm the District Court's order granting summary judgment on Counts I-VIII.  We will also affirm the District Court's decisions denying Le's request for specified document identification under Rule 34 and denying his motion to compel additional testimony.