**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2548
_____

ROBERT DICUIO; WILLIAM SELF;
ANGELA BRYANT; KAREN POCILUYKO,
on behalf of themselves and all others similarly situated;
REUBEN ZADEH,
Appellants

v.

BROTHER INTERNATIONAL CORPORATION
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil Action No. 3-11-cv-01447)
District Judge: Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 21, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, *Circuit Judges*.

(Filed: June 29, 2016)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*

Plaintiffs-Appellants Robert DiCuio and Angela Bryant (collectively, "Plaintiffs") appeal from the District Court's grant of summary judgment in favor of Defendant-Appellee Brother International Corporation ("Brother") in this putative consumer fraud class action based on Brother's design of certain printer models. For the following reasons, we will affirm the District Court's grant of summary judgment.

## I.    Background

DiCuio, a resident of New Jersey, and Bryant, a resident of Illinois, both purchased Brother printers in December 2008.[1] Those printers use three color toner cartridges—cyan, magenta, and yellow. At some point after a color cartridge is installed and used, the printers will signal "Toner Life End" with respect to that cartridge. At this point, the printers generally will no longer print until the cartridge is replaced.

Based on their unfavorable experiences with the printers, Plaintiffs[2] filed a complaint against Brother in 2011 invoking various state consumer fraud statutes and seeking to certify a class of plaintiffs. Plaintiffs alleged that Brother designed their printers to signal "Toner Life End" before the color cartridges inside the printers had run out of useable toner. The District Court did not reach class certification. Instead, it granted Brother's motion for summary judgment, concluding that Plaintiffs had not

---

[1] DiCuio purchased a Brother model HL-4040CN printer and Bryant purchased a Brother model MFC-9440 printer.

[2] Although there were several purported representative plaintiffs in the District Court, only DiCuio and Bryant have pursued their appeals.

sufficiently demonstrated injury-in-fact for Article III standing or an actionable loss

under the state consumer fraud statutes at issue.[3]

The District Court began its analysis by pointing to Brother's promise in its

advertising materials that each color cartridge would provide 1,500 color pages assuming

5% average coverage[4] (the "expected page yield"). The District Court determined that

Plaintiffs had suffered injury-in-fact and an actionable loss if they did not receive the

expected page yield for their used color cartridges. In order to demonstrate that they did

not receive the expected page yield, Plaintiffs needed to show: (1) the number of color

pages printed with their used color cartridges; and (2) average coverage for those

cartridges. The District Court observed that the only evidence Plaintiffs provided on this

point was maintenance reports produced by their printers containing information about

the printers' past use.[5]

---

[3] The District Court analyzed DiCuio's claim under the New Jersey Consumer Fraud Act ("NJCFA"). With respect to Bryant, the District Court conducted a choice-of-law analysis and determined that Bryant could bring a claim only under the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs argue on appeal that this determination was in error and that Bryant should be permitted to bring a claim under the NJCFA. Because the resolution of this question does not affect our result, we assume without deciding that Bryant may also bring a claim under the NJCFA and treat the claims of both plaintiffs together.

[4] Average coverage is the average percentage of a set of pages that is covered with color toner from a given color toner cartridge.

[5] DiCuio's printer model is able to print out a paper report with this information whereas Bryant's printer model provides that same information on a display panel. For ease of reference, in this opinion we will refer to all such information as being provided in "maintenance reports."

The District Court acknowledged that the maintenance reports provided information about the number of color pages printed by Plaintiffs' used color cartridges. However, it concluded that the maintenance reports did not provide information about the average coverage of those cartridges. Although the maintenance reports provided an average coverage figure, the District Court observed that the figure reset to zero each time a new cartridge was installed in the printers and so the figure only related to the color cartridges currently installed in the printers. Accordingly, the District Court concluded that Plaintiffs had not put forth sufficient evidence to demonstrate that they did not receive the expected page yield for their used color cartridges and so had not sufficiently demonstrated injury-in-fact or actionable loss. Plaintiffs timely appealed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), and we have jurisdiction pursuant to 28 U.S.C. § 1291 because the District Court entered final judgment against Plaintiffs. We employ a plenary standard in reviewing a district court's grant of summary judgment and apply the same test the district court should have used initially. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). We similarly employ a plenary standard in reviewing a district court's decision that a plaintiff lacks Article III standing. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party files a motion for summary judgment, the initial burden is on that party to show the absence of a genuine dispute of material fact. *Santini v. Fuentes*, 795

4

F.3d 410, 416 (3d Cir. 2015). The movant discharges this burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (quoting *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001)) (internal quotation marks omitted). After the movant makes such a showing, the burden shifts to the nonmovant to "come forward with specific facts" showing that there is a genuine dispute. *Santini*, 795 F.3d at 416 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

## III.   Analysis

In order to make out a claim under the NJCFA, a plaintiff must show:  "(1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1115 (N.J. 2011) (quoting *Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 576 (N.J. 2010)) (internal quotation marks omitted). On appeal, the parties dispute whether Plaintiffs have put forth sufficient evidence to withstand summary judgment as to the ascertainable loss element of their NJCFA claims.[6]

A plaintiff arguing that he suffered an ascertainable loss must provide "evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss."

---

[6] The parties also dispute whether Plaintiffs have sufficiently demonstrated injury-in-fact for Article III standing. However, Plaintiffs' entire argument on this point is an incorporation by reference of their NJCFA ascertainable loss argument. Therefore, if Plaintiffs have not sufficiently demonstrated that they suffered an ascertainable loss, they have also not sufficiently demonstrated injury-in-fact for Article III standing.

5

*Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005). Such a loss

must be "quantifiable or measurable" under New Jersey law. *Id.* at 793. Plaintiffs argue

that they suffered an "actual loss" because they did not receive the expected page yield

for their used color cartridges. As the District Court observed, in order to demonstrate

they did not receive the expected page yield for their used color cartridges, Plaintiffs

must present evidence about the average coverage of those cartridges.

Brother has discharged its initial burden on summary judgment by pointing out

that there is no evidence in the record that supplies the average coverage of Plaintiffs'

used color cartridges. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of

Educ.*, 587 F.3d 176, 196−97 (3d Cir. 2009). Thus, the burden shifts to Plaintiffs to point

to specific facts about the average coverage of their used color cartridges that suggest

they did not receive the expected page yield. To discharge this burden, as in the District

Court, Plaintiffs point to the average coverage figures in their printers' maintenance

reports.[7]

It is undisputed that the average coverage figures in the maintenance reports

provide information only for the currently installed color cartridges in Plaintiffs' printers.

However, Plaintiffs argue that the average coverage figures for their currently installed

color cartridges are representative of their average coverage printing habits, which have

---

[7] Brother argues that we cannot consider the average coverage figures in the
maintenance reports on summary judgment because they are inadmissible hearsay, *see*
Fed. R. Evid. 801, and have not been authenticated, *see* Fed. R. Evid. 901. Because
resolution of these admissibility questions does not affect our result, we assume without
deciding that the average coverage figures are admissible.

not changed over time, and so those figures can be applied to their used color cartridges. This argument is conclusory as Plaintiffs point to no specific facts from which a jury could draw such an inference about the consistency of Plaintiffs' average coverage printing habits.[8] *See id.* at 197; *cf. Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1048−49 (2016) (observing that purported representative evidence cannot support class certification where no reasonable juror could make an inference that the evidence is truly representative). Such an unsupported assertion does not create a genuine dispute of material fact. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."). Therefore, Plaintiffs have not carried their summary judgment burden to show a genuine dispute as to the average coverage of their used color cartridges and so have not sufficiently demonstrated that they did not receive the expected page yield for those cartridges.

---

[8] Plaintiffs point to deposition testimony by Bryant that the "types of printing" she conducted remained "consistent" over her use of her printer. J.A. 992. DiCuio made a similar statement at his deposition about the "types of documents" he printed. J.A. 899. However, such vague statements, which are unconnected to the technical concept of average coverage, cannot support an inference of consistency as to Plaintiffs' average coverage printing habits.

For example, some of the "types of documents" to which DiCuio was referring were "things related to [his] son's school" and "stuff that would be sent to [him] as an attachment." J.A. 899. Of course, documents within those categories could comprise the entire spectrum of color coverage and so consistently printing those types of documents is not probative of whether DiCuio's average coverage printing habits remained consistent over time.

Plaintiffs attempt to escape this straightforward conclusion with two unavailing arguments. First, Plaintiffs argue that it is Brother, as the summary judgment movant, who bears the burden of proving that Plaintiffs' average coverage printing habits have changed over time. However, as Plaintiffs would bear the burden of proof at trial as to the average coverage of their used color cartridges, it is their burden to point to specific facts in the record proving that their average coverage printing habits have not changed over the lives of their printers—not Brother's burden to put forth evidence *disproving* that speculative proposition. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 297 (3d Cir. 2014).

Second, Plaintiffs argue that "it would be inappropriate to hold [against them] Brother's decision to have the [average coverage figure in the maintenance reports] reset when a new cartridge is installed." Appellants Br. 28. In making this argument, Plaintiffs rely on the Supreme Court's decision in *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946). *Bigelow* held that, where a plaintiff's inability to prove an exact amount of damages arises from wrongdoing of the defendant, the "jury may make a just and reasonable estimate" of damages. *Id. Bigelow* is of no assistance to Plaintiffs because Plaintiffs do not identify any wrongful act by Brother that gave rise to the average coverage figure in the maintenance reports resetting upon the installation of a new color cartridge. *Cf. Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 261 n.2 (3d Cir. 1995). Moreover, for the reasons explained above, the average coverage figures in Plaintiffs' maintenance reports would not allow a jury to make a

"reasonable estimate" of any damages Plaintiffs may have suffered for their used color cartridges. *Bigelow*, 327 U.S. at 264.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs have not shown the existence of a genuine dispute about whether they received the expected page yield for their used color cartridges and thus suffered an ascertainable loss under the NJCFA.[9] We will affirm the District Court's entry of summary judgment in favor of Brother.

---

[9] Because Plaintiffs have not sufficiently demonstrated ascertainable loss under the NJCFA, they have also not sufficiently demonstrated injury-in-fact for Article III standing. *See supra* note 6.

9