NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3574
_____

RONALD E. CHAMBERS; LESLIE A. CHAMBERS,

As guardians of Ferren Chambers, an incapacitated person,

Appellants

v.

SCHOOL DISTRICT OF PHILADELPHIA BOARD OF EDUCATION

‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎‎_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-05-cv-02535)
District Judge:  Honorable Gene E. K. Pratter

_____

Argued on May 23, 2013

Before:  RENDELL and GREENAWAY, JR., Circuit Judges
and ROSENTHAL*, District Judge

(Opinion Filed: September 17, 2013)

_____

*Honorable Lee H. Rosenthal, Judge of the United States District Court for the Southern District of Texas, sitting by designation.

Michael J. Torchia, Esquire **(Argued)**
Alfredo M. Sergio, Esquire
Semanoff, Ormsby, Greenberg & Torchia, LLC
2617 Huntingdon Pike
Huntingdon Valley, PA   19006

Counsel for Appellants


Jeffrey M. Scott, Esquire **(Argued)**
Richard G. Tuttle, Esquire
Archer & Greiner
1650 Market Street
One Liberty Place, 32nd Floor
Philadelphia, PA   19103

Counsel for Appellee

O P I N I O N

**RENDELL**, <u>Circuit Judge</u>:

Ronald and Leslie Chambers, as guardians of their daughter, Ferren Chambers, and in their own right, brought an action against the School District of Philadelphia, arguing that the School District denied Ferren a free and appropriate public education ("FAPE") and seeking relief under the Individuals with Disabilities in Education Act ("IDEA"), the Rehabilitation Act ("RA") and the Americans With Disabilities Act ("ADA").  The present appeal concerns the District Court's denial of Appellants' motion for summary judgment and grant of summary judgment in favor of the School District on Appellants' RA and ADA claims.  For the reasons stated below, we will affirm in part and reverse in part the District Court's order.

2

# I. Background[1]

Appellants filed this suit in May 2005. Their daughter Ferren, now 27 years old, is severely developmentally disabled. She is autistic, suffers from seizures, and communicates at the level of a young child.

In September 1990, Ferren entered a program for children with mental retardation at the Farrell School, a public school, on the recommendation of a School District psychologist. After three weeks, Mr. Chambers removed Ferren from Farrell because he did not think that the program was appropriate given her condition. After a July 1991 hearing, a special education due process appeals panel established by the State's Department of Education reclassified Ferren as an autistic person with pervasive developmental delay and ordered the School District to place her in an autism-support program and develop an individualized education plan ("IEP") to address issues it identified as: social relatedness, interaction, language, and activity level. In February 1992, the School District assigned Ferren to an autism-support program at its Greenfield School. A year and a half later, against Appellants' wishes, the School District transferred Ferren to another autism-support program at Loesche Elementary School. After 11 and a half days of school there, Mr. Chambers removed Ferren from that school.

In November 1994, a school psychologist suggested that Ferren should be placed in a more restrictive educational setting in a private school. Appellants agreed with this suggestion, but the School District did not initially comply because it failed to locate a

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

3

private school that had other autistic children and offered speech or occupational therapy. In 1995, Appellants sent the School District a request for a due process hearing. After some delay, the state appeals panel ordered the School District to implement the psychologist's November 1994 recommendation to place Ferren in a private school. At the beginning of the 1995-96 school year, when Ferren was 11 years old, the School District placed her in the Wordsworth Academy.

In November 1996, Appellants again requested a due process hearing because they thought that the School District was failing to provide Ferren with both speech therapy and occupational therapy at Wordsworth, as Ferren's IEP required. The parties entered into settlement agreements in both 1997 and 1998, in which the School District agreed to provide Ferren with the speech and occupational therapy services she had not previously received. In March 1999, in response to a complaint filed by Appellants, the Pennsylvania Bureau of Special Education issued a report detailing the School District's failure to provide the therapy services required by her IEP. After the report was issued, the parties agreed that the School District would provide compensatory services at its own expense. Those services were terminated, however, after the School District failed to guarantee payments for the therapists that Appellants had identified.

In January 2001, the School District requested that Appellants permit a special education consultant to evaluate Ferren's progress at Wordsworth. Appellants objected, and another due process hearing ensued in September 2001. Ultimately, the evaluation took place, and the consultant concluded that Ferren was the lowest functioning member of her group at Wordsworth and suggested that she be placed in a school for severely

4

mentally retarded students. Over the next two years, however, Ferren remained at Wordsworth as Appellants and the School District engaged in a protracted disagreement over the appropriate people to evaluate her. Meanwhile, in April 2002, Appellants filed another complaint with the Bureau of Special Education, asserting that the School District failed to provide speech and language services as well as occupational and physical therapy to Ferren during the 2000-01 school year. The Bureau found that the School District had not provided Ferren the therapy her IEP required.

In June 2003, the School District reconvened its IEP team. Appellants were unhappy with the proposed IEP and requested another due process hearing. The hearing took place in March 2004 before Hearing Officer Rosemary Mullaly. In April 2004, Mullaly issued her decision, finding that Ferren had been denied a FAPE from 2001 until April 2004 and awarding Ferren 3,180 hours of compensatory education. She also ordered the School District to place $209,000 in an educational trust for Ferren's benefit. Neither party appealed this decision.

Appellants commenced the present action on May 27, 2005, seeking compensatory damages under the IDEA, RA, and ADA. The District Court granted summary judgment in favor of the School District in 2007. On appeal, another panel of the Third Circuit affirmed the dismissal of Appellants' IDEA claim but reversed and remanded the case to the District Court for further proceedings on the RA and ADA claims. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176 (3d Cir. 2009). That panel found that Appellants had not waived their right to pursue their RA and ADA claims on Ferren's behalf, as the District Court had found, and that there may have been a factual

5

issue as to whether the School District had violated these statutes as alleged. *Id.* at 188-90.

Upon remand, both parties filed motions for summary judgment. The District Court once again granted the School District's motion. Specifically, the District Court found that Hearing Officer Mullaly's administrative decision was inadmissible and her conclusions should not be given preclusive effect. *Chambers ex. rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 827 F. Supp. 2d 409, 417-20 (E.D. Pa. 2011). The District Court also held that Appellants had to prove intentional discrimination to support their request for compensatory damages under the RA and ADA. (*Id.* at 420-25.). Although the District Court did not address whether intentional discrimination required evidence showing deliberate indifference, or whether it required evidence showing actual discriminatory animus, it held that under either standard, Appellants had presented no dispute of material fact as to intentional discrimination. (*Id.* at 425-28.) In October 2011, the District Court granted the School District's motion for summary judgment in its entirety, but noted that "in the event a bona fide, good faith argument can be made that the Chambers Plaintiffs erred in their understanding as to the 'record' on which they could or should base their summary judgment motion . . ., the Court would permit an application for leave to re-open and supplement these summary judgment papers." (*Id.* at 430.)

The District Court thereafter vacated its October 2011 order to allow the motion to reopen and additional submissions. From November 2011 to January 2012, Appellants filed motions to supplement the record and the School District responded. After

Appellants filed a "motion to alter judgment," attaching documents that had not been part of the pre-existing record, the Court made clear that it had given Appellants an opportunity to file a motion for reconsideration "*if* they could direct the Court to appropriate citations in the *pre-existing* summary judgment record, . . . and second, *if* they could argue why, if at all, that evidence compels the Court to reconsider its grant of summary judgment." (J.A. 31 (emphasis in original).) The Court clarified that the opportunity was "not an invitation to the Plaintiffs to re-file an entirely new motion for summary judgment or to review and assemble hundreds and hundreds of educational records." (*Id.* (alterations and internal quotation marks omitted).)

The District Court, construing the motion to reopen to alter judgment as a motion for reconsideration, ultimately denied Appellants' motion to reopen, concluding that they had not met the reconsideration standard because they had not demonstrated an intervening change in controlling law, the availability of new evidence which was not available when the Court issued its order, or the need to correct a clear error of law or fact or to prevent manifest injustice. Accordingly, the District Court issued its final judgment, granting the School District's motion for summary judgment in its entirety on August 15, 2012.

On appeal, Appellants argue that the District Court erred by: (1) granting the School District's motion for summary judgment because this Court had already determined that there was a factual dispute as to whether Ferren was denied a FAPE; (2) denying their motion for partial summary judgment because it should have given the findings of two previous administrative hearings preclusive effect; (3) determining that

7

damages were available under the RA and ADA only upon a showing of intentional discrimination; (4) determining that Ferren was not subjected to intentional discrimination; (5) refusing to consider certain evidence offered by Appellants in connection with the cross-motions for summary judgment; and (6) refusing to reconsider its October 24, 2011 opinion granting the School District's motion for summary judgment and denying Appellants' motion.

## II. Standard of Review

Appellate review of an entry of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is plenary, and we apply the same standard as the district court. *Disabled in Action of Pa. v. SEPTA*, 635 F.3d 87, 92 (3d Cir. 2011).

A motion for reconsideration is reviewed for an abuse of discretion. *In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 300 (3d Cir. 2002) (reviewing a motion under Rule 60(b)); *Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir. 1985) (treating a motion for reconsideration as a motion under Rule 59(e) and stating that such motions are generally reviewed for abuse of discretion). However, "if the [district] court's denial was based upon the interpretation and application of a legal precept, review is plenary." *Id.*

## III. Discussion

### A. Denial of a FAPE

Appellants first argue that the District Court erred by granting the School District's motion for summary judgment because a panel of this Court had previously posited that "the record contains enough of a genuine factual dispute about whether the School District in fact provided Ferren with a FAPE." *Chambers*, 587 F.3d at 189-90.

8

This argument misunderstands the basis of the School District's summary judgment motion, however. In the appeal of the motion for summary judgment before us today, the School District's argument is not that it had in fact provided Ferren with a FAPE. Rather, its argument is that Appellants failed to put forth evidence that its denial of a FAPE was a result of intentional discrimination, which they argue is needed to support a compensatory damages award under the RA and ADA. Deciding whether Ferren was denied a FAPE does not resolve this dispute. Thus, whether a previous panel thought that there was a genuine issue of material fact with respect to whether Ferren was given a FAPE is irrelevant.

## B. Previous Administrative Hearings

Next, Appellants argue that the District Court's denial of its partial motion for summary judgment was error because the District Court should have given preclusive effect to the 1995 and 2004 administrative decisions finding that the School District failed to provide Ferren with a FAPE. Under Appellants' theory, the School District has already been determined to be liable under § 504 of the RA and § 202 of the ADA. Although collateral estoppel, or issue preclusion, "forecloses re-litigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment," *Dici v. Pennsylvania*, 91 F.3d 542, 548 (3d Cir. 1996) (internal alterations and quotation marks omitted), if there are different burdens of proof, that will defeat the application of issue preclusion, *In re Braen*, 900 F.2d 621, 624 (3d Cir. 1990). As the District Court noted, Appellants' argument fails to take into account the disparate burdens of proof in the administrative proceedings vis-à-vis the present proceeding.

9

Because of that, issue preclusion does not apply in this case. We need not repeat the District Court's thorough analysis on this point—Appellants' argument must fail.

## C. Compensatory Damages

Appellants also urge that the District Court erred in concluding that intentional discrimination is required for an award of compensatory damages under the RA and ADA. Again, Appellants' argument fails. The District Court's thorough analysis with respect to this issue is supported by our recent decision in *S.H. v. Lower Merion School District*, No. 12-3264, 2013 WL 4752015 (3d Cir. Sept. 5, 2013); *see also Chambers*, 827 F. Supp. 2d at 421-25. In *S.H.*, we held that "claims for compensatory damages under § 504 of the RA and § 202 of the ADA . . . require a finding of intentional discrimination." *S.H.*, 2013 WL at *10. More specifically, we held that "a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA and § 202 of the ADA." *Id.* at *11. Thus, the District Court was correct in holding that Appellants were required to prove intentional discrimination.

## D. Intentional Discrimination

Alternatively, Appellants argue that, even if intentional discrimination is required to award compensatory damages under the RA and ADA, evidence in the record creates a factual dispute as to whether the School District was deliberately indifferent to providing Ferren with a FAPE. Having reviewed the record, we agree with Appellants, and will therefore reverse the District Court's grant of the School District's motion for summary judgment.

10

As discussed above, in *S.H.* we held that a plaintiff must demonstrate intentional discrimination by showing deliberate indifference in order to succeed on a claim for compensatory damages under the RA and ADA. We then explained that the deliberate indifference standard has two parts, "requiring both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *S.H.*, 2013 WL at *11 (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). We also noted that "deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." *S.H.*, 2013 WL at *11 (internal quotation marks omitted).

This case presents a close call. It has been clear since 1991 that Ferren needs both speech and occupational therapy. (*See* J.A. 115 (Special Education Appeals Panel report classifying Ferren "as a child with autism/pervasive developmental delay").) It has also been clear that placements at private schools have not sufficiently addressed Ferren's needs. (*See* Appellee Br. at 12 (noting that Ferren was the "lowest functioning member in the class of autistic students at Wordsworth").) The School District was informed of this at various junctures, and was ordered to provide those services. (*See id.* at 10-11 (recounting various instances in which the School District was ordered to provide services because they had failed to do so).) Appellants' requests were often ignored. Requested hearings often occurred only after extended delays. (*See* J.A. at 802-03 (detailing the School District's delays in scheduling hearings); *id.* at 377-78 (describing a speech therapist arrangement falling through because the School District refused to guarantee payment).) This situation has persisted. Indeed, at oral argument, the School

11

District could not confirm that Ferren received any compensatory hours of education to which she was entitled. Furthermore, several experts have noted these failures and have surmised as to how, over time, they have impacted Ferren. (*See, e.g.*, J.A. 895 (expert report noting that Ferren was placed in classes where instructors were not familiar with her specific disabilities and received inadequate educational services).)

Given this record, there is a genuine dispute of material fact as to whether the School District was deliberately indifferent. Indeed, it seems to us that a reasonable jury could infer that (1) the School District knew that Ferren was not being provided a FAPE, and (2) failed to act appropriately in a way that rose above mere negligence. The record suggests that the School District was made aware numerous times that Ferren was not being provided with the various therapies to which she was entitled. The record also suggests that the School District repeatedly failed to schedule hearings after they were requested, and did not place Ferren in an appropriate program for students with her type of disability.

Of course, reasonable minds could disagree, but that is not the test on summary judgment. While the record does demonstrate that the School District made attempts to provide Ferren with services and participated in developing her IEPs, we cannot ignore the evidence that reflects serious and repeated failures by the School District at several key junctures to ensure that Ferren was receiving the services that were required, and were clearly known to be required. Accordingly, summary judgment was not properly granted because there is a genuine dispute as to whether the School District was deliberately indifferent. Accordingly, we will reverse the order of the District Court.

12

E. Motion for Reconsideration and Supplemental Evidence

Appellants also argue that the District Court erred in refusing to reconsider its October 24, 2011, order and in refusing to consider supplemental evidence outside the previously submitted record. Given that we will remand this case to the District Court on the issue of whether the School District's actions could constitute deliberate indifference, our analysis of the District Court's order denying Appellants' motion for reconsideration is moot.[2]

We note, however, that the District Court did not err in refusing to consider supplemental evidence. A party opposing summary judgment is responsible for pointing to evidence to show disputes of material fact. *See* Fed. R. Civ. P. 56(c); *see also Pavlik v. Lane Ltd./Tobacco Exps. Int'l*, 135 F.3d 876, 882 n.2 (3d Cir. 1998) (affirming a district court that refused to consider newly presented evidence on a motion for reconsideration that was available prior to the filing of summary judgment); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) ("Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration."). To the extent that Appellants argue that the District Court "invited" them to submit post-summary judgment motions and then did not consider the evidence, Appellants misconstrue the District Court's invitation. The District Court afforded Appellants the opportunity to revisit

---

[2] Appellants also contend that the District Court erred by treating their post-summary judgment submissions as motions for reconsideration under Rule 59(e) rather than motions to alter the judgment under Rule 60. We disagree. As the District Court properly noted, "the function of the motion, not the caption [should] dictate which Rule applies." J.A. 33 (internal quotation marks omitted).) Because we will reverse the grant of summary judgment, we need not address this issue further.

13

summary judgment "with more appropriate briefing and/or record references" and repeatedly warned Appellants that it would not consider evidence outside the previous summary judgment record. (J.A. 31.) Thus, the District Court was not wrong in refusing to consider Appellants' supplemental evidence, which was previously available to them.[3]

## IV. Conclusion

For the foregoing reasons, we will affirm in part, reverse in part, and remand this case to the District Court for further proceedings consistent with this Opinion.

---

[3] Although neither the RA nor the ADA has a statute of limitations, the School District argues that the District Court may not consider evidence outside the IDEA's two-year statute of limitations. The District Court did not address this argument, as it was unnecessary to the District Court's holding. Although we believe that Appellants' claims were filed before the statute of limitations took effect, *see Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 370 (3d Cir. 2005) ("[A]mendments to the IDEA have prospective application only . . .. Therefore, the provisions in effect at the time the complaint was filed in 2003 will be applied here."), this issue is more appropriately left to the District Court on remand.