IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE PETITION OF MARLA | § | |
| MATRICE MURPHY | § | No. 77, 2023 |
| | § | |

Submitted: October 11, 2023
Decided: November 9, 2023

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## ORDER

(1) This is Marla Matrice Murphy's second appeal of a decision of the Board of Bar Examiners (the "Board"). In the first appeal, we affirmed the Board's determination that it could not waive Delaware's requirement that applicants pass the Bar Exam before being admitted to practice. We remanded, however, to allow the Board to conduct a hearing to determine what, if any, of Murphy's testing accomodations had been denied during the Bar Exam administration.

(2) After conducting a hearing, the Board Panel (the "Panel") determined that Murphy had been denied one of her previously granted accommodations: the use of scratch paper. But the Panel determined that she was not denied her private-room or double-time accomodations. The Panel held that the appropriate remedy for Murphy's denial of her approved accommodation was to take the Bar Exam

again, free of any infirmities. The Panel also recommended that the Board waive its application fee if she chose to register for the Bar Exam again.

(3) Murphy now appeals the Panel's decision, arguing that her private-room and double-time accomodations were denied. She also argues that in denying multiple accomodations, the Board demonstrated deliberate indifference toward her, entitling her to an award of compensatory damages and attorneys' fees.

(4) Because the Panel's findings are supported by substantial evidence and its legal determinations are free from error, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

(5) In July 2021, Murphy sat for the Delaware Bar Exam after requesting and receiving a number of accommodations from the Board.[1] Because the 2021 Bar Exam occurred during the height of the COVID-19 pandemic, it was administered remotely, using ExamSoft software.[2] Before the Exam, Murphy applied for the following accommodations: 100% extra time for the entire exam ("double-time"); authorization to use pencils, highlighters, and scratch paper; permission to read the questions out loud; stop-the-clock breaks; and use of a private room to take the Exam.[3] The Board approved all accommodations except the stop-the-clock breaks.[4]

---

[1] The following facts are adopted, in part, from *In Re Petition of Marla Matrice Murphy*, 283 A.3d 1167, 1170–71 (Del. 2022) [Hereinafter, *Murphy I*].
[2] *Id*. at 1170.
[3] *Id*. at 1171.
[4] *Id.* The Board also did not address Murphy's request to use highlighters, instead stating she had "permission to have scratch paper and a pencil." *Id*.

2

As a result of the double-time accommodation, Murphy's testing took place over five days.[5]

(6)   The electronic, remote administration of the Exam resulted in unexpected technical problems for some exam takers.[6]  Many exam takers, Murphy included, experienced ExamSoft outages and other difficulties.[7]  During the Exam, Murphy's ExamSoft software crashed three times.[8]

(7)   During the Panel hearing, Murphy testified that the first software outage occurred on the first day of the exam, while she was writing an essay.[9]  She testified that she experienced stress when the software crashed and that it took her "a minute" to relax after the software turned back on.[10]  Murphy also testified that a portion of her essay was deleted when the software crashed, requiring her to retype her previous few minutes of work.[11]  According to Murphy, it took her "a minimum of five minutes" to realize that some of her work was missing.[12]  The second and third software outages occurred on the second day of the exam.[13]  Murphy testified that

---

[5] *Id.* at 1172.
[6] *Id.*
[7] *Id.*  These technical problems plagued bar takers nationwide who used ExamSoft.
[8] App. to Opening Br. at A154–70.
[9] *Id.* at A154.
[10] *Id.* at A157.
[11] *Id.* at A156.
[12] *Id.* at A158.  Murphy also testified it took her "a minute" to realize her work had been deleted. *Id.* at A159.
[13] *Id.* at A166.

she experienced less stress during these two outages as compared to the first.[14] She also testified that it took less time to "reorient" herself after the software was restored, although she still experienced stress and some of her work was deleted.[15] Ultimately, Murphy testified that she felt she was deprived of her double-time accommodation because she lost time rebooting her computer and recreating lost work after each outage.[16]

(8)     Murphy was distracted by her exam proctors' actions, including coughing, texting, and typing sounds. Murphy testified that she was distracted by the first proctor's phone because it was "ringing," but she later testified that the sound that most distracted her was the "clicking" sound produced when he typed on a laptop keyboard.[17] She testified that the second proctor had several coughing fits during the fourth day of the exam,[18] though she reassured Murphy that they were the product of allergies, not COVID-19.[19] Additionally, Murphy testified that the second proctor caused distractions by moving around the room during the fifth day of the exam.[20] Murphy also was distracted by the second proctor's texting, but

---

[14] *Id.* at A166–67.
[15] *Id.*
[16] *Id.* at A168–69.
[17] *Id.* at A160–61. Murphy testified that the proctor's phone sound was on but could not quantify the number of times he received a notification. *Id.* at A161. On cross-examination, Murphy then testified that the proctor's phone rang once. *Id.* at A189; A199.
[18] *Id.* at A163. Murphy could not say how many coughing fits the proctor had. *Id.* at A191
[19] Despite this reassurance, Murphy became preoccupied with her concerns over contracting COVID-19.
[20] App. to Opening Br. at A179.

4

because the phone's sound was off, she was distracted by the sight of the proctor looking at her phone.[21] Neither proctor recalled causing the alleged distractions and both testified that they did not behave with any intent to frustrate Murphy's efforts on the Bar Exam.[22]

(9) Murphy also testified, and the Board concedes, that she was not given scratch paper during the MPT and MBE portions of the exam, despite the Board having approved her use of scratch paper for the entire exam.[23] Ultimately, Murphy testified that she could not point to one distraction that affected her the most, but noted that not having a paper copy of the exam, which she did not request but assumed she would receive, created a "snowball effect" on the first day where each distraction and software crash made the experience "worse and worse."[24]

(10) Before the Board released the Bar Exam results in 2021, it told applicants that, due to the widespread exam outages, the Board intended to adjust exam scores to reflect the effect of the ExamSoft crashes.[25] Because Murphy experienced exam

---

[21] *Id*. at A180–81; A200. Murphy testified that she could not remember if she was provided with earplugs. *Id*. at A191.

[22] *Id*. at A223 –24; A228; A230. The first proctor did remember one instance when his phone vibrated because of an incoming call and thereafter kept it in his pocket to muffle the sound. *Id*. at A228.

[23] Opening Br. Ex. A at 6; App. to Opening Br. at A170.

[24] App. to Opening Br. at A184–85.

[25] *Murphy I*, at 1172. The Board consulted a psychometrician who recommended a pro rata adjustment to MPT and essay questions affected by outages, that is, the pro rata adjustment "allowed for an upward adjustment to an applicant's affected essay score based on the difficulty level of the affected essay and his/her average performance on the written questions in which the applicant had no technical issues." The board also applied an upward adjustment to affected MBE

outages during the essay portions, she received a pro rata adjustment to the essays affected by the software crashes.[26]  Ultimately, in October 2021, Murphy learned that she did not pass the Bar Exam.[27]  She then petitioned the Board for a hearing (the "First Petition"), asserting that "the 'Board acted in an arbitrary and unfair manner in connection with'" the 2021 Bar Exam.[28]  Murphy asserted Due Process and ADA claims in her First Petition.[29]

(11)   The Board denied the First Petition on the grounds that applicants "are not entitled 'to a hearing to challenge their test scores'"[30] and that the Board did not have the authority to admit an applicant who failed to achieve a passing exam score.[31] Murphy appealed the denial to this Court on the same grounds that she petitioned the Board and sought relief in the form of waiver of the Bar Exam requirement and admission to the bar.[32]

(12)    On appeal, we held that "[t]he Board was precise and careful in its [scoring adjustment] remedy, addressing a significant issue for applicants that could

---

sections equaling "the difference between the mean MBE score of the affected applicant population and the mean MBE score of the unaffected applicant population." *Id*. at 1172–73.  The score adjustments were applied using ExamSoft data that catalogued each restart. *Id*. at 1173.

[26] *Id.*

[27] *Id.*

[28] *Id.* (quoting Murphy's Opening Brief on first appeal).

[29] *Id.*

[30] *Id.* (quoting *Applicant No. 26 to 2000 Delaware Bar Examination v. Board of Bar Examiners of the Delaware Supreme Court*, 780 A.2d 252, 254 (Del. 2001)) (internal quotations omitted).

[31] *Id.*

[32] *Id.* at 1170.

have undermined the purposes of the Bar Exam—testing for minimal competence."[33]

We also held that Murphy was not denied Due Process when the Board refused her request for a hearing because the relief she sought—waiver of minimum competence standards and admission to the bar—exceeded the Board's "general function."[34] As to Murphy's claims regarding the denial of her approved accommodations, we remanded so that a complete factual record could aid in the determination of a remedy.[35]

(13)    The Panel held a Rule 29 hearing on November 1, 2022 to address Murphy's contentions that she was denied her approved accommodations.[36] During those proceedings, Murphy argued that she was deprived of the following accommodations: scratch paper, double time, and a "truly quiet and private room."[37] Murphy sought the following remedies: a stand-alone bar exam, pre-approval of her requested accommodations, compensatory damages, and attorneys' fees.[38] Specifically, Murphy requested that the Board pay her private tutor and bar course

---

[33] *Id.* at 1176.

[34] *Id.* at 1178.

[35] *Id*. at 1181.

[36] App. to Opening Br. at A1 (Hearing Tr.). Thirteen witnesses testified at the hearing. Opening Br. Ex. A at 3. Many witnesses were Murphy's friends and family, whose testimony concerned the exam outages' and proctor distractions' effect on Murphy. That testimony was cumulative of Murphy's and, although the rules of evidence are not applied rigidly in a Rule 29 hearing, the testimony was hearsay.

[37] App. to Answering Br. at B32 (Petitioner's Post-Hearing Br.). Murphy's request for accommodations sought a "private" room. Opening Br. Ex. A at 4.

[38] App. to Answering Br. at B22–29 (Petitioner's Post-Hearing Br.). Although the Panel denied Murphy's request for a stand-alone Bar Exam and pre-approval of her accommodations, she has not appealed those determinations.

fees because her reasonable accommodations under the ADA had been denied.[39] Murphy also requested that the Board reimburse her attorneys' fees and costs for the same reason.[40]

(14)  In the Panel's decision, it found that Murphy was denied scratch paper, but received her private-room and double-time accommodations.[41]  The Panel then determined that the appropriate remedy for the deprivation of scratch paper was a waiver of the exam fee—which the Board offered and the Panel adopted—and recommended that the Board approve Murphy's accommodations again if she decided to retake the Exam.[42]

(15)  The Panel denied Murphy's request for compensatory damages and fees on the ground that this Court did not charge the Panel with determining "'whether reasonable accommodations' under the ADA were provided, or with making any other determinations under the ADA."[43]  Moreover, the Panel determined it was not presented with any evidence of what "'reasonable accommodations' under the ADA would have been during the Bar Exam."[44]  The Panel also concluded that Murphy failed to demonstrate that the Board acted with deliberate indifference—the standard

---

[39] *Id*. at B31.
[40] *Id*. at B32.
[41] Opening Br. Ex. A at 9.
[42] *Id.* at 14, 18. The Panel held that it did not have the authority to pre-approve accommodation requests.
[43] *Id*. at 19.
[44] *Id.*

8

for compensatory damages under ADA case law—as to her accomodations.[45] The Panel further determined that it was not a court or agency of competent jurisdiction under 42 U.S.C. § 12205, which was the statute that Murphy relied on for her attorneys' fees claim.[46] Murphy appealed those determinations.

## ANALYSIS

(16)    This Court performs a limited role in reviewing the Board of Bar Examiners' actions.[47] We will not reverse the Board's findings "relating to disputed issues of fact and credibility . . . if such findings are sufficiently supported by the record and are the product of an orderly and logical deductive process."[48] Findings of fact and conclusions as to credibility also will not be reversed if they are "supported by substantial evidence."[49] "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It is greater than a scintilla and less than a preponderance."[50] This Court will affirm "[w]here the

---

[45] Opening Br. Ex. A at 20. The Panel also found that any sovereign immunity issues, raised by Murphy, were mooted by its determination that Murphy was not entitled to damages on other grounds. *Id.*

[46] *Id* at 20. 42 U.S.C. § 12205 provides that, "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."

[47] *Murphy I*, at 1174.; *In re Green*, 464 A.2d 881, 887 (Del. 1983).

[48] Supr. Ct. R. 52(e); *Petition of Nenno*, 472 A.2d 815, 818 (Del. 1983).

[49] *In re Green*, 464 A.2d at 887.

[50] *Gala v. Bullock*, 250 A.3d 52, 69 (Del. 2021) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

determination of facts turns on a question of credibility and the acceptance or rejection of 'live' testimony before the Board."[51]

(17) The Board's construction of its own rules must be reasonable and is reviewed for abuse of discretion.[52]

**A. The Panel's factual findings are supported by substantial evidence.**

(18) Murphy argues that the Board's findings that she was not deprived of her double-time and private-room accommodations are not supported by substantial evidence.[53] She contends that the three software outages, which totaled about 15 minutes, deprived her of her double-time accommodation and that the proctors' distractions deprived her of her private-room accommodation.[54] Contrary to Murphy's arguments, the Panel's factual findings are supported by substantial evidence in the record.

(19) Murphy testified that the first time her computer crashed it took her "a minute" to calm down.[55] Murphy indicated that the second time her computer

---

[51] *Petition of Nenno*, 472 A.2d at 818 (quoting *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972)).
[52] *Papadima v. Board of Bar Examiners of Delaware Supreme Court*, 947 A.2d 1122, 2008 WL 1952088 at *2 (Del. May 6, 2008) (TABLE) (citing *Petition of Nenno*, 472 A.2d at 818–19 (citing *In re Huntly*, 424 A.2d 8, 12 (Del. 1980))).
[53] Opening Br. at 17. Murphy also re-articulates her argument that the upward grade adjustment was insufficient to cure her lost time. In *Murphy I*, this Court held that the Board's upward grade adjustment "was not arbitrary or manifestly unfair" to Murphy or any other test-taker. Murphy *I* at 1170. This argument already was resolved by our Opinion and cannot be raised again.
[54] Opening Br. at 17–18.
[55] App. to Opening Br. at A157 (Hearing Tr.). Murphy argues this Court should take judicial notice that her testimony stating it took "a minute" for her to calm down after the software crashed was used as an idiom that means a "brief period of time" and not just sixty seconds. The rules of

10

crashed, it took her "less time" than the first to reorient herself.[56]  During the third computer crash, Murphy testified that she was not as stressed as the first time.[57]  Her assertion that "a minute" means a "brief period of time" does not substantiate her argument that she was deprived of "significant time."[58]  Murphy argues the record is "replete" with testimony that it took her "significant time" to return to equilibrium after the outages, but she fails to cite any support in the record.[59]

(20)   Even in her briefs, Murphy fails to specify how much time she lost.[60] The failure of proof regarding Murphy's double-time deprivation is compounded by her argument that "if [she] was deprived of twenty, thirty, or forty-five minutes because of [test outages] she was denied her accommodation."[61]  Murphy took the Bar Exam over the course of five days; losing twenty, thirty, or forty-five minutes does not deprive her of her double-time accommodation.[62]

judicial notice do not permit the Court to reinterpret Murphy's testimony.  Regardless, the Panel points out that Murphy "took some additional time to calm herself," indicating it did not take Murphy's use of "a minute" literally.  Opening Br. Ex. A at 11.

[56] *Id*. at A167.

[57] *Id*.

[58] Opening Br. at 1.  *See* Opening Br. Ex. A at 11 ("While [Murphy] took some additional time to calm herself and recreate missing work, no evidence was presented that [Murphy] could not (or did not) proceed with taking the Bar Exam in the remaining time she was granted or that the disruptions were significant enough to deprive her of the double-time accommodation.").

[59] Reply Br. at 11-14.

[60] *Id*. at 14.

[61] *Id*.

[62] App. to Opening Br. at A176 (Hearing Tr.).

11

(21)    Murphy further argues that the proctors' technology-based distractions and coughing represent a deprivation of her private-room accommodation.[63] Although the Panel acknowledged that the proctors caused distractions and that these distractions affected Murphy more than they did other test-takers, it held that these distractions "did not rise to the level of denying [Murphy] the granted [a]ccommodations."[64]    That conclusion was supported by substantial evidence. Murphy conceded that she was aware proctors would be present in the room with her as she took the exam, and although she indicated in her request for accommodations that she is "easily distracted" by the sound of people clicking their keyboards, she did not request a "silent" room.[65]

## B. The Panel did not abuse its discretion when it declined to award damages.

(22)    Finally, Murphy argues that the Board incorrectly determined that she was not entitled to damages.    Specifically, she contends that she is entitled to compensatory damages under ADA case law and Board Rule 32(c).  She also argues she is entitled to attorneys' fees and costs under 42 U.S.C. § 12205.

(23)    Because the Panel determined that Murphy was denied scratch paper, it concluded that she was entitled to a waiver of the application fee and recommended

---

[63] Opening Br. at 18.
[64] Opening Br. Ex. A at 12–13.
[65] App. to Opening Br. at A161 (Hearing Tr.); Opening Br. Ex. A at 4.

12

that the Board re-approve her previously approved accommodations.[66]  The Panel further held that Murphy was not entitled to a damages award because: 1) she failed to raise her ADA claim until post-hearing briefing, and, as a result, she did not create a record that her accomodations were "reasonable" under the ADA;[67] 2) the Board was not a court or agency of competent jurisdiction under the relevant statute; and 3) regardless, Murphy failed to prove that the Board acted with "deliberate indifference."[68]

(24)  Further, the Panel correctly determined that it does not have authority to award damages under Rule 32(c).  Rule 32(c) provides:

> In addition to having the authority to grant or deny permission to sit for the Bar Examination or gain admission to the Bar, the Hearing Panel shall be vested with the authority to fashion and impose such remedies as it shall deem appropriate under the circumstances, including but not limited to the imposition of conditions to be satisfied by the applicant prior to his or her admission to the Bar.

(25)  Contrary to Murphy's argument, Rule 32(c) does not provide the Board with a mechanism for awarding damages simply because it includes the word "remedies." Instead, the rule pertains to a hearing panel's authority over an applicant's admission status, providing a catch-all provision so that the panel may

---

[66] Opening Br. Ex. A at 14, 18.

[67] To overcome the apparent procedural flaw of failing to raise her ADA claim until post-hearing briefing, Murphy argues that because her testing accommodations were provided in an effort to comply with the ADA, her petition—although not explicitly addressing the ADA—sounded in ADA claims and her remedy therefore should be consistent with the ADA.

[68] Opening Br. Ex. A at 18–20.

impose various conditions on an applicant's admission, as well as remedies regarding admission to the bar.

(26)  Even if the Panel had the authority to award damages, Murphy is not entitled to them.  Because Murphy's damages argument rests on this Court holding that she was deprived of all the accommodations for which she appeals, and we have concluded otherwise for the reasons set forth above, we affirm on the basis that she was not subjected to "deliberate indifference" by the Board. [69]

(27)  Further, the record does not support a deliberate-indifference finding.[70] Under that standard, a petitioner first must show that the government had knowledge that a federally protected right was substantially likely to be harmed *and* failed to act upon that likelihood.[71]  A petitioner can show that a right was substantially likely to be violated by alleging either  "a failure to adequately respond to a pattern of past occurrences of injuries like [theirs]," or  "facts that 'prove that the risk of . . . cognizable harm was so great and so obvious that the risk and the failure . . . to respond will alone support finding deliberate indifference.'"[72]  A petitioner also must show that the failure to act was the result of  "a deliberate choice, rather than

---

[69] Opening Br. at 20 ("Here, we are not talking about one but three instances where the Board failed to provide the Appellant reasonable accommodations. Appellant avers that is sufficient to demonstrate that there is deliberate indifference on the part of the Board of Bar examiners.").

[70] The Third Circuit has consistently applied the "deliberate indifference" standard to cases where ADA violations are alleged.

[71] *S.H. ex rel Durrell v. Lower Merion School Dist*., 729 F.3d 248, 265 (3d Cir. 2013).

[72] *Matthews v. Penn Dept. of Corrections*, 827 Fed.Appx. 184, 187 (3d Cir. 2020) (quoting *S.H. ex rel. Durrell*, 729 F.3d at 266).

negligence or bureaucratic inaction."[73] Here, Murphy did not allege a pattern of past occurrences, that the Board was aware of a risk of her accommodations being deprived, or that the Board or its representatives made a "deliberate choice" to deprive her of scratch paper.[74]

(28) For her attorneys' fees and costs argument, Murphy relies on 42 U.S.C. § 12205.[75] The Panel determined that it was not a court or agency of competent jurisdiction within the meaning of that statute and therefore could not award attorneys' fees thereunder.[76] The Panel also concluded that Section 12205 was inapplicable because Murphy's petition did not allege any ADA claims.[77] In response to that holding, Murphy contends that because her accomodations were granted to comply with the ADA, her case "implicates the application of ADA legal principles."[78] Regardless of any procedural flaw, Section 12205 provides for attorneys' fees at the court or agency's "discretion." Accordingly, even if the Panel

---

[73] *Chambers v. School Dist. Of Philadelphia Bd. Of Educ.*, 537 Fed.Appx. 90, 95 (3d Cir. 2013) (quoting *S.H. ex rel. Durrell*, 729 F.3d at 263).

[74] Murphy solely relies on her argument that the deprivation of three different accommodations provides sufficient evidence of the Board's deliberate interference. Opening Br. at 20.

[75] Section 12205 provides: "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."

[76] Opening Br. Ex. A at 20. Murphy, for her part, does not address the Panel's jurisdictional determination in her briefs.

[77] *Id.*

[78] Opening Br. at 21.

had jurisdiction under Section 12205, Murphy has not established that the Panel abused its discretion in deciding not to award attorneys' fees and costs.

NOW, THEREFORE, IT IS ORDERED that the Board of Bar Examiner's decision is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice